IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

| | | |
|---|---|---|
| ABSOLUTE SOFTWARE, INC., and | ) | ECF CASE |
| ABSOLUTE SOFTWARE CORP. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO. |
| BRIGADOON SOFTWARE, INC., | ) | 05-CV-3273(RMB)(THK) |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRIGADOON SOFTWARE, INC. | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABSOLUTE SOFTWARE, INC. and | ) | |
| ABSOLUTE SOFTWARE CORP., | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

———————————————————————)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT, BRIGADOON SOFTWARE, INC.'S MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT**

Bruce D. Katz, Esq. (BK-2041)
225 Broadway – 37th Floor.
New York, NY  10007
(212) 233-3434

*Attorney for Defendant
Brigadoon Software, Inc*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................... iii

I. **PRELIMINARY STATEMENT** ................................ 1

II. **RELEVANT FACTS** ......................................... 2

A.  Introduction ............................................. 2

B.      **Brigadoon's Accused Email Program –
        PC PhoneHome/Mac PhoneHome** ...................... 3

C.      **The Patents-in-Suit** ............................... 5

III. **ARGUMENT** ............................................. 10

A. **Brigadoon Does Not Infringe any of the Claims Asserted Against It** ... 10

B. **Brigadoon Does Not Infringe Independent Claims 1 and 41 of the '758 Patent
   Or Independent Claim 1 of the '863 Patent**
                                                                13

    1. **PCs running Brigadoon's Accused Email Program are Not
   *"Connectable"* to a *"Host System"*** ...................... 15

    2. **Brigadoon Does Not Operate or Maintain a *"Host System"*** ... 16

    3. **Brigadoon's Accused Email Program Does Not Provide *"One or More
   Global Network Communication Links Used to Enable Transmission
   Transmission Between Said Electronic Device and Said Host System"***
                                                                18

    4. **Brigadoon's Accused Email Program is not Loaded Within Said
   Electronic Device *"Such That Said Agent Evades Dectection"***
                                                                20

C. **Brigadoon Does Not Infringe Dependent Claims 3 or 43 of the '758 Patent
   Or Dependent Claim 3 of the '863 Patent**
                                                                21

**D.** **Brigadoon Does Not Infringe Dependent Claims 7 or 47 of the '758 Patent Or Dependent Claim 7 of the '863 Patent**

25

**E.** **Brigadoon Does Not Infringe Dependent Claims 8 or 48 of the '758 Patent Or Dependent Claim 8 of the '863 Patent**

27

**F.** **Brigadoon Does Not Infringe Dependent Claim 9 of the '758 and '863 Patents**

27

**G.** **Brigadoon Does Not Infringe Dependent Claim 18 of the '758 and '863 Patents or Dependent Claim 57 of the '758 Patent**

28

**H.** **Brigadoon Does Not Infringe Dependent Claim 19 of the '758 and '863 Patents or Dependent Claim 58 of the '758 Patent**

29

**I.** **Brigadoon Does Not Infringe Dependent Claims 20 and 56 of the '758 Patent**

30

**J.** **Brigadoon Does Not Infringe Dependent Claim 23 of the '758 Patent**

31

**K.** **Brigadoon Does Not Infringe Dependent Claim 29 of the '758 Patent**

31

**L.** **Brigadoon Does Not Infringe Dependent Claims 32-34 of the '758 Patent**

32

**M.** **Brigadoon Does Not Infringe Dependent Claims 35 or 64 of the '758 Patent**

33

**N.** **Brigadoon Does Not Infringe Dependent Claims 60-63 of the '758 Patent**

34

**IV.   CONCLUSION**

35

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*,
261 F.3d 1329 (Fed. Cir. 2001) ............ 11

*Bai v. L & L Wings, Inc.*,
160 F.3d 1350 (Fed. Cir. 1998) ............ 11

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
922 F.2d 792 (Fed. Cir. 1990) ............ 11,13

*Cross Medical Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005) ............ 12

*Cybor Corp. v. FAS Techs., Inc.*,
138 F.3d 1448 (Fed. Cir. 1998) (en banc) ............ 11

*Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*,
347 F.3d 1314 (Fed. Cir. 2003) ............ 12

*Hormone Research Foundation, Inc. v. Genentech, Inc.*,
904 F.2d 1558 (Fed. Cir. 1990) ............ 11

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
381 F.3d 1111 (Fed. Cir. 2004) ............ 12

*Kegel Co. v. AMF Bowling, Inc.*,
127 F.3d 1420 (Fed. Cir. 1997) ............ 11

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.*,
249 F.3d 1314 (Fed. Cir. 2001) ............ 11

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*),
*aff'd*, 517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996) ............ 11

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.*,
415 F.3d 1335 (Fed. Cir. 2005) ............ 11

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ............ 12

*Playtex Products, Inc. v. Procter & Gamble Co.*,
400 F.3d 901 (Fed. Cir. 2005) ............ 11

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576, 1582 (Fed. Cir. 1996)                                         12

*Wahpeton Canvas Co., Inc. v. Frontier, Inc.*,
    870 F.2d 1546 (Fed. Cir. 1989)                                              13

**<u>Statutes</u>**

35 U.S.C. §112, Sixth Paragraph                                                 28

## I.  PRELIMINARY STATEMENT

By this opposition/cross-motion, Defendant/Counterclaim-Plaintiff, Brigadoon Software, Inc. ("Brigadoon"), opposes Plaintiffs' Motion for Partial Summary Judgment of Infringement of claims 7, 8, 18-20, 23, 29 and 32 of Plaintiffs' U.S. Patent No. 6,244,758 ("the '758 Patent") and claims 7, 8 and 18-20 of Plaintiffs' U.S. Patent No. 6,300,863 ("the '863 Patent").

Brigadoon also hereby Cross-moves for Summary Judgment of Non-Infringement of all of the claims of the '758 and '863 Patents that Plaintiffs have asserted against Brigadoon in this lawsuit.  These are claims 7-9, 18-20, 23, 29, 32-35, 47, 48, 56-58 and 60-64 of the '758 Patent and claims 7, 8 and 18-20 of the '863 Patent.

Although the Complaint asserts infringement of four of Plaintiffs' U.S. patents, Plaintiffs have withdrawn two of these patents and are now accusing Brigadoon of infringing some claims of the '758 and 863 Patents (See Plaintiff's Motion, page 1, fn. 1).

The parties' Summary Judgment Motions must be considered jointly with Brigadoon's concurrently-filed Motion for Claim Construction.  This is because Brigadoon's Motion for Claim Construction sets forth the proper construction of various terms recited in the claims of the patents-in-suit.

Brigadoon also requests that this motion be considered with its Motion for Summary Judgment of Invalidity.

## II.  RELEVANT FACTS

### A.  Introduction

The relevant facts at issue in this case are described in greater detail in the accompanying Declarations of Frank Jones, Brigadoon's president, and Bruce D. Katz, Esq., Brigadoon's counsel.  Some of these facts are briefly summarized below.

The parties are in the business of facilitating the retrieval of stolen PCs.  In connection with that business, each of the parties sell "communications software", that is loaded onto PCs to enable them to be located if they are reported lost or stolen. Consumers who purchase the parties' communications software are provided with free-of-charge retrieval services.[1]  Jones Dec., ¶1.

The parties' communications software shares the following similarities: (1) it is loaded onto PCs to automatically transmit data to a remote computer over the Internet without notifying the user that the data is being sent; (2) the transmitted data is used to facilitate the location and retrieval of stolen PCs; and (3) the presence and operation of the parties' software is not easily detectable by thieves.  Jones Dec., ¶2.

However, *neither* of the patents-in-suit claims these similarities.  In fact, none of Plaintiff's seven issued U.S. patents or its currently-pending patent applications claims these similarities.  Plaintiffs cannot lawfully claim exclusivity in these common features of the parties' competing software because such features were well-known features of publicly-known device-tracking products patented by others long before plaintiffs filed

---

[1] The nature of the parties' businesses and a description of their software are described at plaintiffs' website (www.absolute.com) and defendant's website (www.pcphonehome.com).

their own patent applications.[2]  Plaintiffs did not invent these features, which are common to many device-tracking products, and Plaintiffs could not lawfully obtain a valid patent covering these features.  Only by construing the asserted claims of the patents-in-suit in the narrow manner proposed by Brigadoon in its Motion for Claim Construction can the Court sustain the validity of Plaintiffs' patents-in-suit.  If the independent claims are broadly interpreted in the manner urged by Plaintiffs, the claims are rendered invalid.  When properly interpreted, the claims of the patents-in-suit are exceedingly narrow in scope and recite the "nuances," or specific details of operation of Plaintiffs' software --- which are markedly different from those of Brigadoon's software.

**B.  Brigadoon's Accused Email Program – PC PhoneHome/Mac PhoneHome**

A detailed description of Brigadoon's accused product is described in greater detail in the accompanying Declaration of Frank Jones, Brigadoon's president.

Brigadoon's accused software product ("the Accused Email Program") is an email program that is sold in two versions -- PC PhoneHome (for Windows PCs) and Mac PhoneHome (for Apple PCs).[3]  The Accused Email Program does nothing more than: (1) prompt a user to enter various identifying indicia at the time of installation (user name, address, PC model, serial number, etc.); and (2) automatically send an email containing that identifying indicia to Brigadoon's email addresses each time a PC containing the software is connected to the Internet.  Jones Dec., ¶¶3-4.

---

[2] See Brigadoon's Motion for Summary Judgment of Invalidity of the Patents-in-Suit for a discussion of some of these previously-known device-tracking products and how they invalidate the claims of the patents-in-suit.

[3] The Accused Email Program is also available as PC PhoneHome Enterprise Version (for Windows-based PCs) and Mac PhoneHome Enterprise Version (for Apple PCs).  The "Enterprise Versions" of the software are identical to the non-enterprise versions but are designed to be loaded onto the many PCs owned by an organization rather than a single PC owned by an individual.  Jones Dec., ¶3.

Like each and every one of the billions of emails sent over the Internet on a daily basis, the emails sent to Brigadoon by PCs containing the Accused Email Program contain the "IP address" of the PC that sent the email.  The IP address is the network address assigned to all computers on the Internet.  The IP address operates precisely like "Caller ID" information in that it uniquely identifies the sending computer.  Using the IP address contained in the email message from the sending computer, the individual that sends the email can be identified based upon account records maintained by the email sender's Internet Service Provider ("ISP").  More precisely, based on the IP address contained in the email, the ISP is able to determine the identity (name and address) of the individual from whose Internet account the email was sent.  Jones Dec., ¶5.

Brigadoon retrieves and stores all of the emails sent to its email address by PCs running the Accused Email Program.  However, neither the Accused Email Program sold by Brigadoon nor any other computer hardware or software made, used, sold or offered for sale by Brigadoon performs any PC-locating or retrieval functions.  All PCs of Brigadoon's customers that are reported stolen are tracked by an entirely manual process in the following manner.

When one of Brigadoon's customers reports that their PC has been stolen, Brigadoon locates recent emails it has received from that PC.  Using the publicly-available WHOIS database, Brigadoon manually determines the "owner" of the IP address(es) contained in the email(s).  Typically, this IP address is owned by the Internet Service Provider (ISP) that the email sender has contracted with for Internet access services (such as AOL, Earthlink, or Time Warner).  Once the owner of that IP address (the ISP) has been determined, Brigadoon sends the ISP the most recent emails sent to

Brigadoon's email address by the stolen PC.  Brigadoon also prepares and sends a completed form to local police.  The police use this form to issue a subpoena to the ISP. In response to this subpoena, the ISP searches its own internal records to determine which of its customers to whom that IP address was assigned at the date and time the relevant emails were sent (the date and time are also contained in all emails sent throughout the world).  The local authorities then visit that customer at the address provided by the ISP in an attempt to retrieve the stolen computer.  Jones Dec., ¶¶8-13.

**C.  The Patents-in-Suit**

*Italicized words are used below to indicate terms recited by the claims of the patents-in-suit.*

The patented communications software is not an email program.  It is an intelligent software *agent* that causes the *electronic device* on which it is loaded (referred to in the patents-in-suit as a "client computer") to *connect* to a *host system* over the Internet and engage in two-way communications with the *host system.*  This is accomplished by sending *identifying indicia* and *Internet communication links* to the *host system* in response to instructions received by the intelligent *agent* from the *host system.*[4] The software *agent* automatically controls the client computer to directly *connect* to the *host system* by sending the *host system* a DNS query at predetermined time intervals.[5]

---

[4] The term "host" is a term of art in the computer field.  In the Internet and other large networks, a "host" is defined as "a server computer that has access to other computers on the network.  A host computer provides services, such as news, mail, or data, to computers that connect to it."  Katz Dec., ¶2 and Ex. A. Brigadoon's accused email program never contacts a "host system".  Brigadoon's office PC, which receives emails from client computers running the Accused Email Program, does not provide access to other computers on the network.  Nor does it provide any services or data to any computers that "connect" to it.  Indeed, no client computers running the Accused Email Program ever "connect" to Brigadoon's office PC.  Thus, Brigadoon's office PC is not a "host system."  Jones Dec., ¶7.

[5] A DNS query (Domain Name Service) is a set of instructions created by web browser software when establishing a connection with a web server over the Internet.  For instance, a DNS query is sent by web browser software when a user enters a website address (e.g., www.nysd.uscourts.gov) into an appropriate box in web browser software to connect to a server computer over the internet.  Jones Dec., ¶15.

As disclosed by the patents-in-suit, the DNS query is accompanied by (or encoded) to, contain identifying indicia (i.e., the serial number) of the client computer. The *host system* has an "Internet monitoring subsystem 9y" (*See* Fig. 2 of the patents-in-suit) that saves date/stamps indicating each time it has been contacted by the client computer. These date/time stamps are used to assist in locating stolen client computers.

Thus, in the patented system, the client computer is *connectable* to the *host system* (it "connects" by sending the DNS query <u>directly</u> to the *host system*). However, the Accused Email Program *never* sends a communication directly to Brigadoon's office PC – no *connection* is ever made between a client computer and Brigadoon's office PC (which is not a *host system* according to any conceivable definition of that term). Jones Dec., ¶7. Emails sent by PCs running the Accused Email Program are never sent directly to Brigadoon's office PC. Id. They are sent to an outside, unrelated entity (an ISP) and later downloaded and stored on Brigadoon's office PC. An email is simply sent to Brigadoon's email address – not to Brigadoon's office PC, which is not a *host computer.*

The patents-in-suit further disclose that in response to the encoded DNS query sent by the *agent*, the *host system* decodes the encoded *identifying indicia* received from the client computer and compares it against a list of lost and stolen computers stored on the *host system*. If the *host system* determines that the client computer is contained on that list (and has therefore been reported lost or stolen), the *host system* transmits an instruction directly to the client computer (again, the client and *host* are directly connected) to perform a *traceroute routine*.

*Traceroute* is an old and well-known program that is used to obtain the route over the network <u>between</u> two computers, by listing the IP addresses of all intermediate

6

routers a connection must pass through to get to its destination.  The *traceroute* program provides only the IP addresses of the routers between the client computer and the *host*.  It does not provide the IP addresses of either the client computer or the *host*.  Katz Dec., ¶7.

By performing the *traceroute routine*, the client computer obtains the IP addresses of the "routers" that were used to connect the client computer to the *host system*.[6]  Once the client computer obtains the IP addresses of these routers, it transmits them to the *host system*.[7]  By using the IP addresses of these routers, the location of the client computer can be determined by the *host system.*

Neither Brigadoon's Accused Email Program, nor any other software or hardware made, used, or sold by Brigadoon uses the *traceroute routine* to determine the location of stolen computers.  Jones Dec., ¶39-40.  Indeed, Brigadoon's method for determining the location of stolen PCs does not utilize the IP addresses of routers.  Brigadoon only uses the IP address of the client computer (the computer that sent the email to Brigadoon) to determine the location of a lost or stolen PC.  Brigadoon does this by entering the IP address of the sending PC into the WHOIS database, which instantly reveals the owner of that IP address.  The patented method and system do not do this.  Instead, as disclosed by the patents-in-suit, the location of a lost or stolen PC is determined as follows:

(1)  When the *host system* determines that the client computer is contained on the list of lost or stolen computers, it instructs the *agent* running in the client computer to determine the identity of the *Internet communication links* (IP addresses of routers) *that*

---

[6] Only the claims of the patents-in-suit refer to the IP addresses of the routers used to connect the client computer to the host as *global network communication links*.  The specifications of the patents-in-suit refer to them as *Internet communication links* and never as *global network communication links*.

[7] Normally, multiple routers are contained in the communication pathway between the client computer and the host system.  The *traceroute routine* determines the IP addresses of each of these routers.

*enable transmission between said electronic device* (the client computer) *and the host system* (these are the IP addresses of the routers used to transmit data between the client computer and the *host computer*).

(2)  The *agent* transmits the router IP addresses (also referred to in the patents-in-suit as *Internet communication links*) to the *host system.*

(3)  The *host system* provides the Internet governing body (formerly known as InterNIC) with these *Internet communication links* (IP addresses).  The complete linking information between the lost or stolen client computer and the host system is provided to InterNIC in order to determine the owner of the IP address of the sending computer.

(4)  Once the owner of the IP address is known, the owner is contacted and the date/stamps saved by the "Internet monitoring subsystem 9y" are compared with the ISP's server logs which are used for billing.  These logs generally contain extensive details relating to the owner, time, and date that a particular IP address was used.  Thus, the location from which the client computer called the host through the Internet may be determined.

In addition to using the Internet to contact the *host system,* the patented intelligent software *agent* calls the *host system* by telephone over the Public Switched Telephone Network (PTSN) using a modem.  By this telephone call, the *host system* receives Caller ID information from the telephone company identifying the telephone number from which the client computer is calling the *host computer* so that the location of the PC *within the telephone network* can be determined (through telephone company billing records).

Accordingly, unlike Brigadoon's method of locating stolen PCs, the methods and systems disclosed and claimed by the patents-in-suit *trace* an electronic device (a client computer) onto which an *agent* (communications software) has been loaded *based on the communication pathway taken by data transmitted by the PC to the host system* –i.e., the routers through which the data has passed.[8]

Claim 1 of both of the patents-in-suit recites a two-step method for *tracing* an *electronic device* (client computer) using an *agent* (communications software) loaded onto the PC.  As set forth in the preamble of claim 1, the client computer is *connectable* to a *host system* through a *global network* (the Internet).  The method of claim 1 comprises the steps of: (1) providing the *host system* with *identifying indicia* through the *global network;* and (2) providing the *host system* with *one or more global network communication links used to enable transmission between said electronic device and said host system.*[9]

In the preferred embodiments of both of the patents-in-suit, the software *agent* causes a client computer on which it is running to periodically *connect* to the *host system* over a *global network* (the internet). This is accomplished by sending a DNS query directly to the *host system* and sending *identifying indicia* (serial number of the PC) to the *host system* as well as *one or more of the global network communication links* (the IP addresses of routers) *used to enable transmission between said electronic device* (client computer) *and said host system.*  As further disclosed by the patents-in-suit, the identity

---

[8] In fact, plaintiffs characterized their own invention to the Patent Office as a method of locating PCs by "tracing" the communication link between the client computer and the host system.  See Brigadoon's Motion for Summary Judgment of Invalidity.

[9] Claim 41 of the '758 Patent is the same as claim 1 thereof but is set forth as an apparatus rather than a method claim.  The same infringement/validity analysis applies to both claims.

of the *global network communication links used to enable transmission between the calling PC and the host system* (the IP addresses of the routers used to transmit data between the client computer and the *host computer*) are determined by, performing a *traceroute routine* (which *only* determines the IP addresses of these routers and not the IP addresses of the client computer or host computer).

More specifically, when the client computer connects to the *host system* over the internet by sending the DNS query thereto, it also sends to the *host system* the serial number of the client computer (along with or encoded within the DNS query). When the *host system* receives the serial number and determines that the client computer is contained in a list of lost and stolen computers stored on the *host system,* the *host system* instructs the *agent* software to perform the *traceroute routin*e to determine the identity of the *global network communication links* (e.g. IP addresses of routers) (also referred to as *internet communication links* in the patents-in-suit) *used to enable transmission between said electronic device* (the client computer) *and said host system.* Once the IP addresses of these routers are determined, the addresses are sent by the calling PC to the *host system* to assist the host system in tracking the calling PC.

### III.  ARGUMENT

**A.  Brigadoon Does Not Infringe Any of the Claims Asserted Against It**

Brigadoon is accused of infringing claims 7-9, 18-20, 23, 29, 32-35, 47, 48, 56-58 and 60-64 of the '758 Patent and claims 7, 8 and 18-20 of the '863 Patent (*See* page 1 of Plaintiffs' Summary Judgment Motion).  Although plaintiffs have moved for summary judgment of infringement only as to claims 7, 8, 18-20, 23, 29 and 32 of the '758 Patent and claims 7, 8 and 18-20 of the '863 Patent, Brigadoon's instant Motion for Summary

Judgment of Non-Infringement is directed to ALL of the claims asserted against it by Plaintiffs.

The determination of infringement is a two-step process.  In the first step, the Court must construe the claims to correctly determine their scope (see Brigadoon's Motion for Claim Construction).  In the second step, the Court must determine whether the claims, as properly interpreted, "cover" the accused device or process.  Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996).  See also Lockheed Martin Corp. v. Space Systems/Loral, Inc., 249 F.3d 1314, 1323 (Fed. Cir. 2001); Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 796 (Fed. Cir. 1990); Hormone Research Foundation, Inc. v. Genentech, Inc., 904 F.2d 1558, 1562 (Fed. Cir. 1990); Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).  See also Playtex Products, Inc. v. Procter & Gamble Co., 400 F.3d 901 (Fed. Cir. 2005).  The first part of the process is a legal question and the second is factual.  See Hormone Research Foundation, Inc., 904 F.2d at 1562; Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998).  The burden is on the patent holder to show infringement by a preponderance of the evidence.  See Kegel Co. v. AMF Bowling, Inc., 127 F.3d 1420, 1425 (Fed. Cir. 1997).  The second step in the infringement test, which requires a comparison of the claims to the accused device, is a question of fact, and "requires a determination that every claim limitation or its equivalent be found in the accused device."  N. Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1344 (Fed. Cir. 2005) (internal citations omitted); Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 261 F.3d 1329, 1336 (Fed. Cir. 2001) ("[l]iteral infringement requires that each and

every limitation set forth in a claim appear in an accused product").  See also *Cross Medical Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005); Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc., 347 F.3d 1314, 1324 (Fed. Cir. 2003).  As Brigadoon will demonstrate below, The Accused Email Program does not include "each and every" limitation of the claims asserted against it by Plaintiffs.

In Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc), the Federal Circuit explained: "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Thus, a court's analysis begins with a review of the claim terms which "'are generally given their ordinary and customary meaning.'"  Id. (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation."  Id.  "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  Id.

In its Motion for Claim Construction, Brigadoon sets forth the standard for determining "ordinary and customary meanings" of various terms and phrases contained in the claims at issue in this motion.  In the analysis that follows, Brigadoon has used these "ordinary and customary meanings" to demonstrate that the Accused Email Program does not infringe any of the claims asserted against it by Plaintiffs -- which are

claims 7-9, 18-20, 23, 29, 32-35, 47, 48, 56-58 and 60-64 of the '758 Patent and claims 7, 8 and 18-20 of the '863 Patent.

All of the claims at issue depend upon either independent claims 1 or 41of the '758 Patent or independent claim 1 of the '863 Patent. In order to infringe any of dependent claims 7-9, 18-20, 23, 29 or 32-35 of the '758 Patent, Brigadoon must also infringe independent claim 1. In order to infringe any of dependent claims 47, 48, 56-58 or 60-64 of the '758 Patent, Brigadoon must also infringe independent claim 41 of the '758 Patent. In order to infringe any of dependent claims 7, 8 or 18-20 of the '863 Patent, Brigadoon must also infringe independent claim 1 of the '863 Patent. *See Becton Dickinson and Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 798 (Fed. Cir. 1990) (citing *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ("[o]ne who does not infringe an independent claim cannot infringe a claim dependent on and thus containing all the limitations of that claim").

Thus, as preliminary matter, Brigadoon will demonstrate that it does not infringe independent claims 1 and 41 of the '758 and '863 Patents and independent claim 1 of the '863 Patent -- such that it cannot be deemed to infringe *any* of the dependent claims asserted against it in this litigation. Nonetheless, after demonstrating that it does not infringe the independent claims, Brigadoon will show that the Accused Email Program does not include the limitations recited in most of the dependent claims asserted by Plaintiffs.

## B.  Brigadoon Does Not Infringe Independent Claims 1 and 41 of the '758 Patent Or Independent Claim 1 of the '863 Patent

Independent claim 1 of both of the patents-in-suit recites a two-step method for *tracing* an *electronic device* (PC) using an *agent* (communications software) loaded onto

13

the PC.  The PC is *connectable* to a *host system* through a *global network* (the internet).

The method comprises the steps of:

(1) providing the *host system* with *identifying indicia* through the *global network;* and

(2) providing the *host system* with *one or more global network communication links used to enable transmission between said electronic device and said host system.*

Independent claim 41 of the '758 Patent is the same as claim 1 of the '758 Patent but is set forth as an "apparatus claim" rather than a "method claim."  The same infringement and validity analysis applies to both claims.

The differences between independent claims 1 and 41 of the '758 and independent claim 1 of the '863 Patent are as follows: Independent claims 1 and 41 of the '758 Patent recite that the *global network communication links* are themselves used for determining the location of the electronic device.  Contrastingly, independent claim 1 of the '863 patent recites that the "*transmission" via the* communication links (rather than the communication links themselves) is used for determining the location of the electronic device.  Further, independent claims 1 and 41 of the '758 patent contain the additional limitation that the agent is loaded within the electronic device "such that said agent evades detection".  This limitation is not contained in claim 1 of the '863 Patent.[10]

Once the claims of the patents-in-suit have been properly interpreted by the Court in accordance with Brigadoon's concurrently-filed Motion for Claim Construction, it will be readily seen that Brigadoon does not infringe independent claims 1 and 41 of the '758

---

[10] The phrase "said transmission via said communication links" was added to claim 1 of the '863 Patent to overcome a claim rejection based on the Sheffer patent.  See Brigadoon's Motion for Summary Judgment of Invalidity.  By that amendment, plaintiff was making it clear that the "transmission via the communication links", rather than the identity of the communication links themselves and rather than the data contained in the transmission, is used for determining the location of the electronic device.

Patent (and thus all claims depending therefrom) and independent claim 1 of the '863

Patent (and thus all claims depending therefrom) for, *inter alia,* the following reasons.

### 1. PCs running Brigadoon's Accused Email Program are Not *"Connectable"* to a *"Host System"*

The preamble of independent claim 1 of both of the patents-in-suit and

independent claim 41 of the '758 Patent requires that the *electronic device* (client

computer) is *connectable* to the *host system*.

As set forth in Brigadoon's concurrently-filed Motion for Claim Construction, the

word *connectable*, as used in the patents-in-suit, means that <u>the electronic device is able</u>

<u>to be connected by a physical link via wire, radio, fiber optic cable, or other medium to</u>

<u>the host system to send signals to and receive signals from the host system.</u>

This claim limitation is not met in the Accused Email Program.  PCs loaded with

the Accused Email Program are not *connectable* to a host system.  PCs loaded with the

Accused Email Program merely send an email to Brigadoon's email address and are not

*connectable* to Brigadoon's office PC or any other computer operated by Brigadoon --

under any conceivable interpretation of the word *"connectable"*.  See Jones Dec., ¶¶7,

16-24.

Accordingly, Brigadoon does not infringe independent claims 1 and 41 of the

'758 Patent and independent claim 1 of the '863 Patent.

Although the computer that sends the email (the PCs running the Accused Email

Program) and the computer that receives the email (Brigadoon's office PC) are both

connected to the Internet, these computers are *never* connected to each other as required

by the independent claims of the patents-in-suit.  Instead, the Accused Email Program

sends emails to Brigadoon's ISP.  Brigadoon periodically accesses, downloads and stores

these emails on its office PC at a later time.  No connection is ever made between PCs

running the Accused Email Program and Brigadoon's office PC.

Although PCs running the Accused Email Program and Brigadoon's office PC

both "connect" to Brigadoon's ISP (at different times), *they never connect to each other*.

By merely sending an email to Brigadoon's email address, the PCs running the Accused

Email Program are not *connectable* to any computer operated by Brigadoon, as required

by independent claims 1 and 41 of the '758 Patent and independent claim 1 of the '863

Patent.

Accordingly, Brigadoon cannot be deemed to infringe independent claims 1 and

41 of the '758 Patent (and all claims depending therefrom) and independent claim 1 of

the '863 Patent (and all claims depending therefrom).

2**. Brigadoon Does Not Operate or Maintain a "*Host System*"**

Independent claims 1 and 41 of the '758 Patent and independent claim 1 of the

'863 Patent require communication between the *electronic device* and a *host system*.

Brigadoon's accused email program does not communicate with a *host system* as

explicitly recited by the independent claims of the patents-in-suit.

As set forth in Brigadoon's Motion for Claim Construction, the phrase *host

system,* as used in the patents-in-suit, means a computer that sends communications to the

client *electronic device*, receives communications from the client *electronic device* and

provides multiple services to assist in locating the client *electronic device*.

The Accused Email Program does not infringe independent claims 1 and 41 of the

'758 Patent and independent claim 1 of the '863 Patent because it never causes a PC on

which it is loaded to contact and/or provide information to a *host system* as required by

these claims. Jones Dec., ¶7, 16-24. Brigadoon's office PC, which receives emails from PCs running The Accused Email Program, does not provide access to other computers on the network and does not provide any services, or data, to PCs running the Accused Email Program. Thus, Brigadoon's office PC is not a *host system*.

In fact, Brigadoon does not infringe even if the Court adopts the dictionary definition of "host computer" submitted in plaintiffs' motion. This definition is – "A computer, attached to a network, providing primary services such as computation, database access, or special programs or programming languages." The Accused Email Program sends emails to Brigadoon's email address. As discussed in the Jones Declaration, Brigadoon's office PC, which retrieve these emails, is an off-the-shelf Apple Macintosh PC that has not been modified, configured, or programmed in any manner whatsoever to perform any special functions. That computer does not provide any "services" whatsoever to client computers and most assuredly does not provide "services" to client computers along the lines of "computation, database access, or special programs or programming languages."

In summary, Brigadoon's office PC, which receives emails from client computers running The Accused Email Program, is not a *host system* as that term is known and generally used in the computer field and as used in the patents-in-suit. Brigadoon's office PC does not host any process relative to the client computer and does not contain data, programs, programming languages, or anything else that may be accessed by the client computer. Brigadoon's office PC simply does not provide any access of any kind whatsoever to PCs running the Accused Email Program.

Therefore, Brigadoon's office PC, which merely receives emails from client computers running the Accused Email Program, is not a *host computer* as that term is understood by those of ordinary skill in the art, or as that term is used in the specifications and claims of the '758 and '863 Patents.

Accordingly, Brigadoon cannot be deemed to infringe independent claims 1 and 41 of the '758 Patent (and all claims depending therefrom) and independent claim 1 of the '863 Patent (and all claims depending therefrom).

### 3. **Brigadoon's Accused Email Program Does Not Provide *"One or More Global Network Communication Links Used to Enable Transmission Between Said Electronic Device and Said Host System"***

Independent claims 1 and 41 of the '758 Patent and independent claim 1 of the '863 Patent require the step of providing said *host system* with *one or more global network communication links used to enable transmission between said electronic device and said host system.*  Brigadoon's accused email program does not do this.

As discussed in Brigadoon's Motion for Claim Construction, the phrase *one or more global network communication links used to enable transmission between said electronic device and said host system* means the IP addresses of a sufficient number of the routers that are accessed to enable communication between the client electronic device and the host system to enable determination of the location of the client electronic device.

The phrase *global network communication links used to enable communication between said electronic device and said host system* is used repeatedly, consistently and unmistakably throughout the specifications of the patents-in-suit to identify the IP addresses of the routers that are accessed to enable communication between the client

18

computer and the *host system*.  The Accused Email Program does not provide the IP addresses of any routers to a host system.  Jones Dec., ¶¶25-29.

In fact, the Accused Email Program does not provide a host system with ANY of *global network communication links used to enable transmission between said electronic device and said host system.*

Instead, Brigadoon's Accused Email Program merely sends an email to one of Brigadoon's email address.  That email contains information identifying the transmitting client computer and also contains the "network address," or "IP address" of the client computer, which is used by Brigadoon and an Internet Service Provider (ISP), such as AOL, to determine the physical location of the client computer.

The patents-in-suit explicitly state that the IP address of the client computer is likely insufficient to determine the location of the client computer.  Thus, the patents-in-suit utilize the *traceroute routine* to determine and provide the *host system* with the *global network communication links used to enable transmission between said electronic device and said host system,* which are used to help locate the client computer.  The <u>only</u> information provided by the *traceroute routine* is the IP addresses of the routers used to enable transmission between the client computer and the host system.  Thus, the *global network communication links used to enable transmission between said electronic device and said host system* are the IP addresses of the routers used to enable communication between these two devices.

The Accused Email Program merely sends the IP address of the client computer to Brigadoon's email address and does not send *global network communication links "used to enable transmission between said electronic device (the client computer) and*

19

*said host system"* as required by independent claims 1 and 41 of the '758 Patent and

independent claim 1 of the '863 Patent.

Accordingly, the Accused Email Program and PC retrieval services are markedly

different from those disclosed and claimed by the patents-in-suit.  Brigadoon uses only

the IP address of the client computer to locate the computer by manually accessing public

records (via the WHOIS database) to determine the location of a lost or stolen PC.  All of

the claims of the patents-in-suit require "tracing of the communication link between the

lost or stolen PC and a *host system* (by using the IP addresses of routers).

### 4. **Brigadoon's Accused Email Program is not Loaded Within Said Electronic Device *"Such That Said Agent Evades Detection"***

Independent claims 1 and 41 of the '758 Patent require "*loading said agent within*

*said electronic device for initiating communication with said host system such that said*

*agent evades detection"*.  Brigadoon's Accused Email Program does not infringe these

claims because it is not loaded within an electronic device such that it evades detection.

The Accused Email Program is loaded into a computer in precisely the same way as other

conventional programs.  The fact that the Accused Email Program is loaded in a

computer is readily detectable by a user.  The Accused Email Program simply does not

evade detection.  A knowledgeable user can readily detect the presence of the Accused

Email Program.  Jones Dec., ¶30.

In summary, in order to infringe independent claims 1 and 41 of the '758 Patent

and independent claim 1 of the '863 Patent, an accused product or method must: (1) be

*connectable* to (2) a *host system* through a *global network* and (3) provide the *host system*

with *one or more global network communication links used to enable transmission*

*between said electronic device and said host system*.  The Accused Email Program does

not infringe any of these independent claims because it does not cause a computer in which it is loaded to be *connectable* to a *host system* and does not provide a *host system* with <u>any</u> of the *global network communication links used to enable transmission between said electronic device and said host system*.  Furthermore, PCs loaded with the Accused Email Program are not loaded into PCs such that they evade detection as required by independent claims 1 and 41of the '758 Patent.

Accordingly, Brigadoon does not infringe independent claims 1 and 41 of the '758 Patent and independent claim 1 of the '863 Patent.  For this reason, the Accused Email Program cannot infringe any of the claims which depend upon these independent claims.  These dependent claims are claims 2-35 and 42-64 of the '758 Patent and claims 2-36, 43-48 or 53-56 of the '863 Patent because each of those claims depends upon independent claim 1 or 41 of the patents-in-suit and, by definition, include all the limitations thereof.

For the foregoing reasons, Plaintiffs' infringement claims should be dismissed.  As will be demonstrated hereinafter, the Accused Email Program also does not include the limitations of the dependent claims asserted against it in this litigation and Plaintiffs' infringement claims should be dismissed on those grounds as well.

**C.  <u>Brigadoon Does Not Infringe Dependent Claims 3 or 43 of the '758 Patent Or Dependent Claim 3 of the '863 Patent</u>**

As demonstrated above, Brigadoon does not infringe independent claims 1 and 41 of the '758 Patent and independent claim 1 of the '863 Patent.  Thus, it cannot be deemed to infringe dependent claims 3 or 43 of the '758 Patent (which depend on independent claims 1 and 41, respectively, of the '758 Patent) and dependent claim 3 of the '863 Patent (which depends upon claim 1 of the '863 Patent).

However, even if Brigadoon did infringe the independent claims, it could not be deemed to infringe claims 3 and 43 because the Accused Email Program does not meet all of the limitations contained in these claims.

More specifically, dependent claim 3 of the '758 patent and dependent claim 3 of the '863 Patent further limit independent claim 1 of the respective patents by reciting that:

(1) *said electronic device is further connected to said host system through a telephone network, and said method further includes the steps of*

(2) *providing said identifying indicia to said host system through said telephone network, and*

(3) *determining the location of said electronic device by tracing the source of said identifying indicia within said telephone network.*

Dependent claim 43 of the '758 Patent further limits independent claim 41 by further reciting that:

(1) *said electronic device is further connected to said host system through a telephone network, and*

(2) *said apparatus further includes means for providing said identifying indicia to said host system through said telephone network, and*

(3) *means for determining the location of said electronic device by tracing the source of said identifying indicia within said telephone network.*

As described by the patents-in-suit, in addition to using the Internet to contact the *host system,* the patented intelligent software *agent* calls the *host system* by telephone over the Public Switched Telephone Network (PTSN) using a modem contained in the client computer.

When it receives this telephone call, the *host system* receives Caller ID information from the telephone company identifying the telephone number from which the client computer is calling the *host computer.* In this manner, the location of the PC *within the telephone network* can be determined (by referencing telephone company

billing records).  It is this structure of the patents-in-suit that is recited by dependent claims 3 and 43 of the '758 Patent and dependent Claim 3 of the '863 Patent.

As described at ¶¶ 31-35 of the Jones Dec., neither Brigadoon itself nor the Accused Email Program performs any similar functions.

In their motion and in the declaration of their engineering witness, plaintiffs address only the limitations claims 3 and 43 labeled above as (1) and (2).  Plaintiff's motion conveniently overlooks the limitation labeled above as (3) in its entirety – *determining the location of said electronic device by tracing the source of said identifying indicia within said telephone network.*

Patent infringement can be shown only by demonstrating that Brigadoon infringes "each and every limitation" of claims 3 and 43 (*See* page 13 above).  Since plaintiffs cannot possibly meet this burden, they have addressed only limitations (1) and (2) of claims 3 and 43, which are present in the Accused Email Program, and ignoring limitation (3), which is entirely absent from the Accused Email Program.

In this regard, the Accused Email Program does not perform the step labeled as (3) in dependent claim 3 of both of the patents-in-suit.  Nor does it include the structure labeled as (3) in dependent claim 43 of the '758 Patent.

More specifically, Brigadoon does not *ever* perform the step of tracing the location of an electronic device *within a telephone network* as required by claim 3 of the '758 and '863 Patents.  Nor does the Accused Email Program include structure for tracing the location of an electronic device *within a telephone network* as required by claim 43 of the '758 Patent.

As discussed above, Brigadoon determines the location of a stolen PC containing the Accused Email Program by manually reviewing public records and by seeking the assistance of an ISP to review its records to determine the physical address of an individual or business subscriber to whom a specific IP address was assigned at a particular date and time.  The step of tracing the source of identifying indicia *within a telephone network*, as recited by claim 3 of the '758 Patent and claim 3 of the '863 Patent, is simply never performed by or in connection with the Accused Email Program.

In order to find that Brigadoon infringes claims 3 and 43 of the '758 Patent and claim 3 of the '863 Patent, it is necessary to show that Brigadoon determines the location of the electronic device (the PCs running the Accused Email Program) *within said telephone network.*  Although Brigadoon attempts to determine the location of stolen PCs containing the Accused Email Program, Brigadoon never engages in *tracing the location* of stolen PCs *within a telephone network* or by *tracing* the source of identifying indicia *within a telephone network* as required by claims 3 and/or 43 of the patents-in-suit.

Furthermore, claim 43 of the '758 Patent *requires means for determining the location of said electronic device by tracing the source of said identifying indicia within said telephone network.*  The Accused Email Program does not include any means whatsoever for determining the source of identifying indicia and most certainly does not include the claimed *means* for tracing the location of the electronic device *within said telephone network*, as recited by claim 43 of the '758 Patent.  The Accused Email Program does not include any means whatsoever for determining the source of the identifying indicia.  The source of identifying indicia (a client computer) is not determined by the Accused Email Program but is determined manually by Brigadoon's

24

employee's manual search of public records and by an ISP's review of its own records to determine the street address of its subscriber to whom a specific IP address was assigned at a particular date and time. The locating process used by Brigadoon is clearly not done within a telephone network as required by dependent claims 3/43 of the patents-in-suit.

### D. Brigadoon Does Not Infringe Dependent Claims 7 or 47 of the '758 Patent Or Dependent Claim 7 of the '863 Patent

Because Brigadoon does not infringe independent claims 1 and 41 and dependent claim 3 of the '758 Patent, and does not infringe independent claim 1 and dependent claim 3 of the '863 Patent, Brigadoon cannot be deemed to infringe dependent claims 7 or 47 of the '758 Patent or dependent claim 7 of the '863 Patent. However, even if Brigadoon did infringe base claims 1 and 3, and 41 and 43 of the '758 Patent and base claims 1 and 3 of the '863 Patent, it can not be deemed to infringe claims 7 and 47 because its accused email program does not meet the limitations contained in these claims.

More specifically, dependent claim 7 of the patents-in-suit further limit dependent claim 3 of the respective patents by reciting that:

> said step of providing said host system with said identifying indicia through said global network, and said step of providing said identifying indicia to said host system through said telephone network occur at *predetermined intervals*.

Similarly, dependent claim 47 of the '758 Patent further limits dependent claim 43 by reciting that:

> said means for providing said host system with said identifying indicia through said global network, and said means for providing said identifying indicia to said host system through said telephone network operate at *predetermined intervals*.

As discussed in Brigadoon's Motion for Claim Construction, the phrase *predermined intervals* means that <u>the step of providing the identifying indicia to the host system is performed regularly at time intervals that are determined beforehand.  Stated otherwise, the "intervals" between the times that the identifying indicia is provided to the host system are "determined beforehand."</u>

Earlier versions of the Accused Email Program sent emails containing identifying indicia to Brigadoon's email address every 24 hours.  Thus, these earlier versions of Brigadoon's Accused Email Program met the requirement for sending identifying indicia at *predetermined intervals* – regular intervals of time that are determined beforehand (every 24 hours).  Jones Dec., ¶36.

However, the version of the Accused Email Program that is currently being offered for sale by Brigadoon does not send emails every 24 hours.  Instead, the current version sends emails containing identifying indicia to Brigadoon's email address at *random* and not *regularly at intervals that are determined beforehand.*  Jones Dec., ¶37.

More specifically, the current version of the Accused Email Program sends an email to Brigadoon's email address each time an Internet connection is established using a computer on which the Accused Email Program is loaded.  This occurs at random times that are certainly not "determined beforehand."  Jones Dec., ¶38.  Since this occurs at entirely random times rather than at time intervals that are determined beforehand, it does not occur at the *predetermined intervals* required by dependent claims 7 and 47 of the '758 Patent and dependent claim 7 of the '863 Patent.

**E.  Brigadoon Does Not Infringe Dependent Claims 8 or 48 of the '758 Patent
    Or Dependent Claim 8 of the '863 Patent**

Dependent claim 8 of the '758 Patent and dependent claim 8 of the '863 Patent further limit dependent claim 7 of the respective patents by reciting that the electronic device is lost or stolen and, further includes the step of tracing lost or stolen electronic devices.  The Accused Email Program does not infringe claim 8 of the '758 Patent or claim 8 of the '863 Patent because it does not infringe claims 1, 3 or 7 of either the '758 Patent or the '863 Patent, upon which claim 8 of each patent depends.

Dependent claim 48 of the '758 Patent further limits claim 43 by reciting that the electronic device is lost or stolen.  The Accused Email Program does not infringe claim 48 because it does not infringe claims 41 or 43, upon which claim 48 depends.

**F.  Brigadoon Does Not Infringe Dependent Claim 9 of the '758 and '863 Patents**

Dependent claim 9 of the patents-in-suit further limit claim 2 of the respective patents.  Claim 2 further limits claim 1 by reciting that the *global network* is the *Internet*.  Claim 9 further recites that the step of providing said host system with said one or more of the *Internet communication links* is accomplished using a *traceroute routine*.

As described in Brigadoon's Motion for Claim Construction, a *traceroute routine* is defined as <u>a program that provides the route over the network between the client electronic device and the host system, by listing the IP addresses of all intermediate routers a connection must pass through to get from the client electronic device to the host system</u>.

The Accused Email Program does not *ever* perform a *traceroute routine* and does not cause a *traceroute routine* to be performed.  Nor does Brigadoon ever perform a

*traceroute routin*e in connection with its attempts to locate its customers stolen PCs. Jones Dec., 39-40.

Accordingly, the Accused Email Program does not infringe claim 9 of either of the patents-in-suit.  Also, the Accused Email Program does not infringe claim 9 because it does not infringe claim 1, upon which claim 9 depends.

### G.  Brigadoon Does Not Infringe Dependent Claims 18 or 57 of the '758 Patent or Dependent Claim 18 of the '863 Patent

Dependent claim 18 of the patents-in-suit further limit dependent claim 17 of the respective patents.  Claim 17 of the '758 and '863 Patents further limit claim 1 of the respective patents.  Claim 17 of both patents recites that the electronic device is a computer having a hard drive.  Claim 18 of both patents recites the additional step of *providing said agent with deflection means to enable said agent to resist disablement attempts and evade detection.*

Dependent claim 57 of the '758 Patent further limits claim 42, which recites that the global network is the Internet, by reciting that the *agent is provided with deflection means for evading detection and resisting disablement.*

As described in Brigadoon's Motion for Claim Construction, the claimed *deflection means* is defined as <u>software that deflects attempts to read or write to the memory location where the agent has been installed in the client computer by generating meaningless bytes of data when read attempts are made to the agent's location in memory and informing the user that write attempts to that memory location have been successful even though no data is really stored at that location.</u>  This definition is mandated by the requirements of 35 U.S.C. §112, sixth paragraph.

The Accused Email Program does not include the claimed *deflection means*.  In this regard, the Accused Email Program does not include software routines that generate meaningless bytes of data to be returned to the user when read attempts are made to location where it is stored.  Nor does the Accused Email Program include software routines for accepting input data and informing the user that the write has been successful when write attempts are made to location where it is stored.  Nor does the Accused Email Program include any software routines that perform a similar function to that of the claimed *deflection means*.  Jones Dec., ¶41.  Plaintiffs do not allege otherwise.

Accordingly, the Accused Email Program does not infringe claim 18 or claim 57 of the '758 Patent or claim 18 of the '863 Patent.  Also, the Accused Email Program does not infringe these claims because it does not infringe claim 1 or 41 of either patent, upon which claim 18/57 depends.

**H.  Brigadoon Does Not Infringe Dependent Claims 19 or 58 of the '758 Patent or Dependent Claim 18 of the '863 Patent**

Dependent claim 19 of the '758 and '864 Patents Patent further limit dependent claim 18 of the respective patents.  Claim 19 of both patents recites that *the deflection means deflects read and write attempts to the location where said agent is disposed*.

Dependent claim 58 of the '758 Patent further limits claim 57 by reciting that the *deflection means deflects read and write attempts to the location where said agent is disposed.*

As discussed in the preceding subsection in connection with dependent claim 18, the Accused Email Program does not include the deflection means recited in dependent claim 19 of the '758 and '863 Patents and dependent claim 58 of the '758 Patent.

Accordingly, the Accused Email Program does not infringe dependent claim 19 of the '758 and '863 Patents or dependent claim 58 of the '758 Patent.  Also, the Accused Email Program also does not infringe claim 19 or claim 58 because it does not infringe claims 1 or 18 of the patents-in-suit, upon which claim 19 depends, or claims 41 and  57, upon which claim 58 depends.

## I.  Brigadoon Does Not Infringe Dependent Claims 20 and 56 of the '758 Patent

Dependent claim 20 of the '758 Patent further limits independent claim 1 of the respective patents by reciting that *the step of evading detection is accomplished by providing an agent which is operable without interfering with the normal operation of said electronic device*.

Dependent claim 56 of the '758 Patent further limits claim 41 by reciting that the *agent evades detection by operating without interfering with the normal operation of said electronic device*.

The Accused Email Program does not infringe dependent claims 20 and 56 of the '758 Patent.  A PC in which the Accused Email Program has been installed runs differently than it does without the accused email program loaded thereon.  Thus, the Accused Email Program most certainly does interfere with the normal operation of the electronic device.  Jones Dec., ¶42.

Accordingly, the Accused Email Program does not infringe dependent claims 20 and 56 of the '758 Patent.  Also, the Accused Email Program also does not infringe either of claims 20 or 56 because it does not infringe independent claim 1, upon which claim 20 depends or independent claim 41, upon which claim56 depends.

**J.  Brigadoon Does Not Infringe Dependent Claim 23 of the '758 Patent**

Dependent claim 23 of the '758 Patent further limits claim dependent 17.  Claim 17 further limits claim 1 by reciting that the electronic device is a computer having a hard drive.  Claim 23 further limits claim 17 by reciting that *the step of loading said agent within said computer is accomplished by loading said agent within an operating system file on said hard drive*.

As described in Brigadoon's Motion for Claim Construction, an Operating System File is defined as <u>one of the programs making up the operating system of a computer</u>.

The Accused Email Program does not infringe claim 23 because it is not loaded within an operating system file on the hard drive.  Jones Dec., ¶43.  Also, the Accused Email Program does not infringe claim 23 because it does not infringe claim 1, upon which claim 23 depends.

**K.  Brigadoon Does Not Infringe Dependent Claim 29 of the '758 Patent**

Dependent claim 29 of the '758 Patent further limits dependent claim 17 thereof. Claim 17 further limits claim 1 by reciting that the electronic device is a computer having a hard drive.  Claim 29 further limits claim 17 by reciting that the *agent is an application program*.

As described in Brigadoon's Motion for Claim Construction, an *application program* is defined as <u>a program designed to assist the user in the performance of a specific task, such as word processing, accounting, or inventory management.  An application is contrasted with a utility, which is a program designed to perform a particular task that solves narrowly focused problems or those related to computer system</u>

management (for example, a storage backup program, disk and file recovery program, or resource editor).

The Accused Email Program is not an *application program* as that term is understood in the art and used in the patents-in-suit.  Instead, the Accused Email Program is a utility program because its functions are intended to solve a narrowly focused problem related to computer system management -- sending the same email to Brigadoon's email address each time the computer accesses the Internet so that the location of the computer can be determined if it is stolen.  Jones Dec., ¶44-45.

Accordingly, the Accused Email Program does not infringe claim 29 because it is not an *application program*.  Also, the Accused Email Program also does not infringe claim 29 because it does not infringe claim 1, upon which claim 29 depends.

**L.  <u>Brigadoon Does Not Infringe Dependent Claims 32-34 of the '758 Patent</u>**

Dependent claim 32 of the '758 Patent further limits dependent claim 31.  Claim 31 further limits claim 1 and recites that the agent provides said identifying indicia automatically and without user intervention.  Claim 32 further recites that the step of providing said host system with said identifying indicia occurs without causing audible or visible signals to be emitted from said electronic device.

Dependent claim 33 of the '758 Patent further limits dependent claim 2, which recites that the global network of claim 1 is the Internet.  Claim 33 further limits claim 2 by reciting that the communication link between said electronic device and said host system is provided through a link to a private network connection to the Internet.

Dependent claim 34 of the '758 Patent further limits dependent claim 2, which recites that the global network of claim 1 is the Internet.  Claim 34 further limits claim 2

by reciting that the communication link between said electronic device and said host system is provided through a telephone line connected to an Internet provider.

The Accused Email Program does not infringe any of claims 32-34 of the '758 Patent because it does not infringe claim 1, upon which each of claims 32-34 depends.

## M.  Brigadoon Does Not Infringe Dependent Claims 35 or 64 of the '758 Patent

Dependent claim 35 of the '758 Patent further limits claim 1 by reciting the additional step of *assigning said identifying indicia to said agent wherein said identifying indicia comprises a unique electronic serial number, said electronic serial number for enabling the determination of the identity of said electronic device associated with said agent*.

Dependent claim 64 of the '758 Patent depends upon claim 42, which recites that the global network is the Internet.  Dependent claim 64 further recites *means for assigning said identifying indicia to said agent wherein said identifying indicia comprises a unique electronic serial number, said electronic serial number for enabling the determination of the identity of said electronic device associated with said agent*.

Plaintiffs do not allege that the Accused Email Program *assigns said identifying indicia to said agent*, as required by dependent claims 35 and 64.  The Accused Email Program does not, in fact, perform this step.  Nor does Brigadoon itself perform this step. Jones Dec., ¶46.

Accordingly, the Accused Email Program does not infringe dependent claims 35 or 64 of the '758 Patent because it does not *assign said identifying indicia to said agent* as required by the claim.  Also, the Accused Email Program does not infringe dependent

claims 35 and 64 because it does not infringe claim 1, upon which claim 35 depends and does not infringe independent claim 41, upon which dependent claim 64 depends.

**N.  Brigadoon Does Not Infringe Dependent Claims 60-63 of the '758 Patent**

Dependent claim 60 of the '758 Patent further limits claim 59, which recites that the means for providing said host system with said identifying indicia operates automatically and without user intervention.  Claim 60 further limits claim 59 by reciting that the means for providing said host system with said identifying indicia for said electronic device occurs without causing audible or visible signals to be emitted from said electronic device.

Dependent claim 61 of the '758 Patent depends upon claim 42, which recites that the global network is the Internet, and further recites that the Internet connection between said electronic device and said host system is provided through a link to a private network connection to the Internet.

Dependent claim 62 of the '758 Patent depends upon claim 61 and further recites that the link to a private network connection to the Internet is a wireless link.

Dependent claim 63 of the '758 Patent depends upon claim 42, which recites that the global network is the Internet, and further recites that the Internet connection between said electronic device and said host system is provided through a telephone line connected to an Internet provider.

The Accused Email Program does not infringe any of dependent claims 60-63 of the '758 Patent because it does not infringe claims 42, 42 or 59, upon which these claims depend.

## **IV.  CONCLUSION**

For the reasons stated above, the accused Brigadoon email program does not infringe any of claims 7-9, 18-20, 23, 29, 32-35, 47, 48, 56-58, 60-63 or 64 of the '758 Patent or any of claims 7, 8 or 18-20 of the '863 Patent.  Accordingly, Brigadoon's motion for summary judgment of non-infringement should be granted.


Dated: March 20, 2006


                              _____/s/_____
                         By:  Bruce D. Katz, Esq. (BK-2041)
                              225 Broadway – 37th Floor.
                              New York, NY  10007
                              (212)233-3434

                              *Attorney for Defendant/*
                              *Counterclaim-Plaintiff*
                              *Brigadoon Software, Inc*