IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| ABSOLUTE SOFTWARE, INC., and | ) | ECF CASE |
| ABSOLUTE SOFTWARE CORP. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO. |
| BRIGADOON SOFTWARE, INC., | ) | 05-CV-3273(RMB)(THK) |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRIGADOON SOFTWARE, INC. | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABSOLUTE SOFTWARE, INC. and | ) | |
| ABSOLUTE SOFTWARE CORP., | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

_____)


**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLAIM CONSTRUCTION
AND SUMMARY JUDGMENT OF INFRINGEMENT
AND
IN SUPPORT OF DEFENDANT, BRIGADOON SOFTWARE, INC'.S
MOTION FOR CLAIM CONSTRUCTION AND
SUMMARY JUDGMENT OF NON-INFRINGEMENT**


Bruce D. Katz, Esq. (BK-2041)
225 Broadway – 37th Floor.
New York, NY  10007
(212) 233-3434

*Attorney for Defendant
Brigadoon Software, Inc*

## I.  PRELIMINARY STATEMENT

By this opposition/cross-motion, Defendant/Counterclaim-Plaintiff, Brigadoon Software, Inc. ("Brigadoon"), opposes Plaintiffs' Motion for Claim Construction and Partial Summary Judgment of Infringement of claims 7, 8, 18-20, 23, 29 and 32 of Plaintiffs' U.S. Patent No. 6,244,758 ("the '758 Patent") and claims 7, 8 and 18-20 of Plaintiffs' U.S. Patent No. 6,300,863 ("the '863 Patent").  Brigadoon also hereby Cross-Moves for Claim Construction and Summary Judgment of Non-Infringement of *all* asserted claims of the '758 and '863 Patents.   These are claims 7-9, 18-20, 23, 29, 32-35, 47, 48, 56-58 and 60-64 of the '758 Patent and claims 7, 8 and 18-20 of the '863 Patent.[1]

## II.  RELEVANT FACTS

The relevant facts, including a description of Brigadoon's Accused Email Program and the Patents-in-Suit, are described throughout the Declaration of Frank Jones, Brigadoon's president (hereinafter "Jones Dec."), and the Declaration of Bruce D. Katz, Esq., Brigadoon's counsel (hereinafter "Katz Dec.").

The parties are in the business of facilitating the retrieval of stolen PCs.  In connection therewith, the parties sell "communications software" that is loaded onto PCs to enable them to be located if they are reported lost or stolen.  Consumers who purchase the parties' communications software are provided with free-of-charge retrieval services.  *See* Jones Dec., ¶1.

The parties' communications software shares the following similarities: (1) it is loaded onto PCs to automatically transmit data to a remote computer over the Internet without notifying the user that the data is being sent; (2) the transmitted data is used to facilitate the location and

---

[1] Although the Complaint asserts infringement of four of Plaintiffs' U.S. patents, Plaintiffs have withdrawn two of these patents and are now accusing Brigadoon of infringing some claims of the '758 and 863 Patents (See Plaintiff's Motion, page 1, fn. 1).

retrieval of stolen PCs; and (3) the presence and operation of the parties' software is not easily detectable by thieves.  *See* Jones Dec., ¶2.

However, *neither* of the patents-in-suit gives Plaintiffs exclusivity in these similarities. In fact, none of Plaintiff's seven issued U.S. patents or its currently-pending patent applications gives Plaintiffs exclusivity in these similarities.  Plaintiffs cannot lawfully claim exclusivity in these common features of the parties' competing software because such features were well-known features of publicly-known device-tracking products patented by others long before plaintiffs filed their own patent applications.  Plaintiffs did not invent these features, which are common to other device-tracking products, and Plaintiffs could not lawfully obtain a valid patent covering these features.  Only by construing the asserted claims of the patents-in-suit in the narrow manner proposed by Brigadoon can the Court sustain the validity of Plaintiffs' patents-in-suit.  If the independent claims are broadly interpreted in the manner urged by Plaintiffs, the claims are rendered invalid.  When properly interpreted, the claims of the patents-in-suit are exceedingly narrow in scope and recite the "nuances," or specific details of operation of Plaintiffs' software -- which are markedly different from those of Brigadoon's software.

### III.  ARGUMENT

### A.  AN  INFRINGEMENT/NON-INFRINGEMENT ANALYSIS MUST BE PRECEDED BY CLAIM CONSTRUCTION

The determination of infringement is a two-step process.  In the first step, the Court must construe the claims to correctly determine their scope.  In the second step, the Court must determine whether the claims, as properly interpreted, "cover" the accused device or process. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996).  *See also Playtex Products, Inc. v. Procter & Gamble Co.*, 400 F.3d 901 (Fed. Cir. 2005); *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 249 F.3d 1314, 1323 (Fed. Cir. 2001); *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d

792, 796 (Fed. Cir. 1990); *Hormone Research Foundation, Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1562 (Fed. Cir. 1990); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*).

Claim construction, the first step in the infringement analysis, is a legal question.  The second step, comparing the claims to the accused product, is factual.  *Hormone Research Foundation, Inc.*, 904 F.2d at 1562; *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).  The burden is on the patent holder to show infringement by a preponderance of the evidence.  *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1425 (Fed. Cir. 1997).  The second step in the infringement test, which requires a comparison of the claims to the accused device, is a question of fact, and "requires a determination that every claim limitation or its equivalent be found in the accused device."  *N. Am. Container, Inc. v. Plastipak Packaging, Inc*., 415 F.3d 1335, 1344 (Fed. Cir. 2005); *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001) ("[l]iteral infringement requires that each and every limitation set forth in a claim appear in an accused product").  *See also Cross Medical Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005); *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003).

The first part of the infringement test, claim construction, is addressed only partly in this memorandum.  Specifically, the law governing claim construction is discussed in this memorandum.  Claim construction involves an analysis of the "intrinsic evidence" (the specifications, claims and file histories of the patents-in-suit) and certain items of "extrinsic evidence" (such as dictionary definitions).  This evidence and its impact on the meaning of certain disputed claim terms are addressed in the Katz Declaration.

The second part of the infringement test, comparison of the claims to the accused product, is addressed herein based on the facts set forth in the Katz Declaration and the Jones

Declaration.  As demonstrated herein and in the accompanying Katz and Jones Declarations, when the asserted claims are properly construed, Brigadoon's Accused Email Program does not include "each and every" limitation of any of the claims asserted against it by Plaintiffs.

## B.  THE DISPUTED CLAIM TERMS

With respect to the asserted claims of the patents-in-suit, the following disputed claim terms must be construed by the Court prior to addressing the infringement/non-infringement arguments raised by the parties' motions: (1) *Host System*; (2) *Connectable*; (3) *One or More Global Network Communication Links Used to Enable Transmission Between Said Electronic Device and Said Host System;* (4) *Predetermined Intervals;* (5) *Traceroute Routine;* (6) *Deflection Means;* (7) *An Operating System File;* and (8) *Application Program.*  Brigadoon's proposed constructions of these eight disputed claim terms and the intrinsic and extrinsic evidence relied on in support of those constructions is set forth in detail in the accompanying Katz Declaration.  Brigadoon's proposed definitions of these eight disputed claim terms are also set forth in an Attachment to this memorandum.

## C.  PLAINTIFF'S CLAIM CONSTRUCTION METHODOLOGY IS ENTIRELY WRONG

Relying on *Texas Digital Systems v. Telegenix,* 308 F.3d 1193 (Fed. Cir. 2002) and its progeny, Plaintiffs urge this Court to adopt a methodology for claim construction that was expressly *overruled* by the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*), *cert. denied*, __ U.S. __, 2006 U.S. LEXIS 1154 (2006).  Plaintiffs also erroneously cite (at pgs. 6-8 of their brief) three principles of claim construction which were substantially altered by the *Phillips* decision.

More specifically, Plaintiffs' motion papers apply an erroneous two-step claim construction methodology which: (1) First relies solely upon "extrinsic evidence" to define disputed claim terms.  Namely, plaintiffs rely solely on the self-serving Declaration of their

highly-paid engineering witness, Gregory B. Ennis, and definitions from ordinary and technical dictionaries carefully selected and culled out from all such available resources sources by Plaintiffs' counsel to define the supposed "ordinary and customary meanings" of the claim terms *host system, identifying indicia* and *global network communication links.* Plaintiffs define these terms in a self-serving, overly-broad and out-of-context manner entirely divorced from the meaning imparted to those terms by the patents-in-suit; and (2) After defining the disputed terms in a self-serving manner based solely on extrinsic evidence, Plaintiffs' erroneous claim construction method then "consults" the specifications of the patents-in-suit only to see if the overly-broad, out-of-context and self-serving definitions given by their expert should be altered or limited. According to Plaintiffs, these broad definitions are to be limited "if, and only if," the specification explicitly sets forth a contrary definition or disclaims a portion of the broad definition derived based on the extrinsic evidence.[2]

The claim construction methodology proposed by Plaintiffs was promulgated by the Federal Circuit in *Texas Digital* and followed by its progeny. *See, e.g., C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861-62 (Fed. Cir. 2004) (contrasting "long line of cases" which "indicates that the intrinsic record is the primary source for determining claim meaning" and "more recent" (*Texas Digital*) line of cases which indicates that extrinsic evidence such as dictionaries are the primary source for determining claim meaning).

In *Phillips v. AWH*, the Federal Circuit overruled the claim construction methodology of *Texas Digital*, noting that such an approach is likely to result in the overly-broad claim interpretations urged by Plaintiffs ("…if the district court starts with the broad dictionary definition … and fails to fully appreciate how the specification implicitly limits that definition,

---

[2] "[E]xtrinsic evidence is that evidence which is external to the patent and file history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996). Conversely, "intrinsic evidence" consists of the specification, claims and file histories of the patents-in-suit.

the error will systematically cause the construction of the claim to be unduly expansive."). *Id.* 415 F.3d at 1321. This risk is greatly reduced if the court construes the meaning of disputed claim terms based on their use in context -- in the claims, specification, and prosecution history. *Id.*

To remedy this problem, the *Phillips* Court held that the "ordinary meaning" of a claim term is not to be determined based on dictionary definitions or expert testimony.[3] Instead, the "ordinary meaning" of a claim term is defined as the meaning that a skilled artisan would ascribe to that term after reading the entire patent. *Id.* 415 F.3d at 1321. Claim terms must be construed based on the meaning imparted to those terms (whether explicitly, implicitly, or based on usage in context) by the entire patent document. Such meaning is imparted based on the context of the use of terms in the patent. Plaintiffs' summary judgment motion seeks to define the claim terms *host system, identifying indicia and global network communication links* in an out-of-context manner that is entirely divorced from their use in the patents-in-suit.

The meaning of a disputed claim term to a person of ordinary skill in the art, on the patent's filing date, is ascertained by reference to the claim, the written description, and, if it is part of the record, the prosecution history. "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). *See also Bell & Howell Document Management Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997) ("… reliance on extrinsic evidence to interpret claims is proper only

---

[3] "Ordinarily, the Court should not rely on expert testimony to assist in claim construction, because the public is entitled to rely on the public record of the patentee's claim (as contained in the patent claim, the specification, and the prosecution history) to ascertain the scope of the claimed invention." *Vitronics,* 90 F.3d at 1583. "Where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper." *Id.*

6

when the claim language remains genuinely ambiguous after consideration of the intrinsic evidence …").

Under erroneous Plaintiffs' approach to claim construction, the "ordinary meaning" of the disputed claim terms is based entirely on the testimony of Plaintiffs' highly-paid engineering witness.  However, under Federal Circuit guidelines, the "ordinary meaning" is defined as the meaning that would be ascribed to the claim terms by a skilled artisan after reading the entire patent.  The specification is "the single best guide to the meaning of a disputed term" and "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication."  *Phillips*, 415 F.3d at 1315 (citing *Vitronics*, 90 F.3d at 1582; *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004) ("Even when guidance is not provided in explicit definitional format, the specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents."); *Novartis Pharms. Corp. v. Abbott Labs.*, 375 F.3d 1328, 1334-35 (Fed. Cir. 2004) (same); *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001) ("[A] claim term may be clearly redefined without an explicit statement of redefinition.")). *See also Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003) ("A fundamental rule of claim construction is that terms in a patent document are construed with the meaning with which they are presented in the patent document.  Thus claims must be construed so as to be consistent with the specification, of which they are a part."); *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term ... in a vacuum.  Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."); *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1310 (Fed. Cir. 2005) (intrinsic record "usually provides the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill

in the art at the time of the invention"); *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 341, 1351 (Fed. Cir. 2004) (proper definition is the "definition that one of ordinary skill in the art could ascertain from the intrinsic evidence in the record").

### D.  BRIGADOON'S PROPOSED CONSTRUCTIONS OF THE DISPUTED CLAIM TERMS ARE CORRECT – THEY ARE BASED ENTIRELY ON THE INTRINSIC EVIDENCE AND ARE ALSO CONSISTENT WITH THE EXTRINSIC EVIDENCE

Brigadoon's proposed constructions of the disputed claim terms, and the evidence supporting those constructions are set forth in the Katz Declaration. As described throughout the Katz Declaration, Brigadoon's proposed definitions of the disputed claim terms are based entirely upon the intrinsic evidence.  In other words, Brigadoon's proposed meanings are the meanings imparted to the disputed claim terms by the specifications and file histories of the patents-in-suit.  Brigadoon's proposed meanings are also confirmed by the incontrovertible extrinsic evidence of record in the form of definitions from technical and ordinary dictionaries.

In the following non-infringement analysis, Brigadoon has used the proposed meanings of the eight disputed claim terms set forth in the Katz Declaration to demonstrate that its Accused Email Program does not infringe any of the asserted claims of the patents-in-suit – claims 7-9, 18-20, 23, 29, 32-35, 47, 48, 56-58 and 60-64 of the '758 Patent and claims 7, 8 and 18-20 of the '863 Patent.

As described in detail in the Katz Declaration, the disputed claim terms are repeatedly, consistently and unmistakably used throughout the patents-in-suit use in precisely the manner defined by Brigadoon.  Despite this, Plaintiffs will invariably contend that Brigadoon's proposed definition of the disputed claim terms seeks to read limitations from the specification into the claims.  This argument is always raised by patent infringement plaintiffs.  However it is entirely untrue.  As in all patent cases, Brigadoon's proposed definitions are nothing more than the ordinary meanings of the disputed claim terms as those terms are used and thus implicitly

defined by the patents-in-suit and their file histories, and as those terms are understood in the art and defined by the extrinsic evidence.  *See, e.g., Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.,* 93 F.3d 1572, 1578 (Fed. Cir. 1996) (appellant's contention that court's definition of "staple cartridge" was based on impermissibly reading limitations from specification into claim was rejected.  "District Court did not import an additional limitation into the claims; instead, it looked to the specification to aid its interpretation of a term already in the claim, an entirely appropriate practice").  *See also V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1310-11 (Fed. Cir. 2005) (defining "realeasably attaching" in context of patent specification as requiring ease of removability); *Toro Co. v. White Consolidated Industries, Inc.*, 199 F.3d 1295 (Fed. Cir. 1999) (interpreting recitation of a cover "including" a restriction ring to require attachment of the ring to the cover); *Wang Laboratories, Inc. v. America Online, Inc.*, 197 F.3d 1377, 1382 (Fed. Cir. 1999) (construing the word "frame" to be limited to "character-based protocols"); *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258 (Fed. Cir. 2001) (construing "modes" to be limited to the three categories described in the because the patentees defined the term "mode" by implication, through the term's consistent use throughout the patent specification); *Alloc, Inc. v. International Trade Commission*, 342 F.3d 1361 (Fed. Cir. 2003) (construing claims directed to flooring products comprised of interlocking panels to require "play" between panels because all disclosed embodiments included play and statements made in specification criticized prior art flooring systems without play); *Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001) (construing claims directed to balloon dilation catheters as being limited to catheters with coaxial lumens rather than catheters with dual lumen configuration because specification addressed only catheters with coaxial lumens as "the basic sleeve structure for all embodiments … contemplated and disclosed herein"); *C.R. Bard, Inc. v. U.S. Surgical Corp.*,

9

388 F.3d 858, 864 (Fed. Cir. 2004) (concluding that phrases "conformable" and "pliable" require

pleating based on use of these terms in context of intrinsic evidence patent specification); and

*Microsoft Corp. v. Multi-Tech Sys., Inc.,* 357 F.3d 1340, 1349 (Fed. Cir. 2004) (interpreting

"sending," "transmitting," and "receiving" limitations as requiring direct transmission over

telephone line when patentee stated that invention transmits over a standard telephone line, thus

disclaiming transmission over a packet-switched network).

### E.  BRIGADOON DOES NOT INFRINGE ANY OF THE ASSERTED CLAIMS

All of the asserted claims depend upon either independent claims 1 or 41of the '758

Patent or independent claim 1 of the '863 Patent.  To infringe any of the dependent claims,

Brigadoon must also infringe the corresponding independent claims (and any intervening

claims).  *See Becton Dickinson and Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 798 (Fed. Cir. 1990)

(citing *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989)

("[o]ne who does not infringe an independent claim cannot infringe a claim dependent on and

thus containing all the limitations of that claim")).

Brigadoon will first demonstrate that it does not infringe independent claims 1 and 41 of

the '758 Patent and independent claim 1 of the '863 Patent -- such that it cannot be deemed to

infringe *any* of the dependent claims asserted against it in this litigation.  Brigadoon will also

show that its Accused Email Program does not include the limitations recited in the dependent

claims asserted by Plaintiffs.

### 1.  Brigadoon Does Not Infringe Independent Claims 1 and 41 of the '758 Patent or Independent Claim 1 of the '863 Patent

*Italicized words are used below to indicate terms recited by the claims of the patents-in-suit.*

Independent claim 1 of both of the patents-in-suit recites a method for *tracing* an

*electronic device* (PC) using an *agent* (communications software) loaded onto the PC.  The PC is

co*nnectable* to a *host system* through a *global network* (the internet).   The method comprises the

steps of:

(1) providing the *host system* with *identifying indicia* through the *global network;* and

(2) providing the *host system* with *one or more global network communication links used to enable transmission between said electronic device and said host system.*

Independent claim 41 of the '758 Patent is the same as claim 1 of the '758 Patent but is

set forth as an "apparatus claim" rather than a "method claim."   The same infringement and

validity analysis applies to both claims.   *In Re Walter*, 618 F.2d 758 (CCPA 1980).

The differences between independent claims 1 and 41 of the '758 and independent claim

1 of the '863 Patent are as follows: Independent claims 1 and 41 of the '758 Patent recite that the

*global network communication links* are themselves used for determining the location of the

electronic device.   Contrastingly, independent claim 1 of the '863 patent recites that the

"*transmission via said"* communication links (rather than the communication links themselves)

is used for determining the location of the electronic device.   Further, independent claims 1 and

41 of the '758 patent contain the additional limitation that the agent is loaded within the

electronic device "*such that said agent evades detection*".   This limitation is not contained in

claim 1 of the '863 Patent.[4]

Once the claims of the patents-in-suit have been properly interpreted by the Court based

on the intrinsic evidence, as set forth in the accompanying Katz Declaration, it will be readily

seen that Brigadoon does not infringe independent claims 1 and 41 of the '758 Patent (and thus

all claims depending therefrom) and independent claim 1 of the '863 Patent (and thus all claims

depending therefrom) for, *inter alia,* the following reasons.

---

[4] The phrase "*said transmission via said communication links*" was added to claim 1 of the '863 Patent to overcome a claim rejection based on the Sheffer patent.   *See* Katz Dec., ¶¶59-62.   By that amendment, plaintiff was making it clear that the "transmission via the communication links", rather than the identity of the communication links themselves, and rather than the data contained in the transmission, is used for determining the location of the electronic device.   *Id.*

a. **PCs running Brigadoon's Accused Email Program
   Are Not "Connectable" to a "Host System"**

The preambles of independent claim 1 of both of the patents-in-suit and independent

claim 41 of the '758 Patent require that the *electronic device* (client computer) is *connectable* to

a *host system*.

The word *connectable*, as used in the patents-in-suit, means that <u>the electronic device is</u>

<u>able to be connected by a physical link via wire, radio, fiber optic cable, or other medium to the</u>

<u>host system to send signals to and receive signals from the host system.</u>  *See* Katz Dec., ¶¶33-36.

As described in the Katz Declaration, the patents-in-suit repeatedly, consistently and

unmistakably use the words "connect", "connects", "connected", or "connectable"

interchangeably to describe a direct link via wire, cable, radio wave, or other medium, between

two or more communication devices.

The claim limitation requiring that electronic device to be *connectable* to the host system

is not met in the Accused Email Program.  As described at ¶¶7 and 16-24 of the Jones

Declaration, PCs loaded with the Accused Email Program are not *connectable* to a host system.

PCs loaded with the Accused Email Program merely send an email to Brigadoon's email address

and are not *connectable* to Brigadoon's office PC or any other computer operated by Brigadoon -

- under any conceivable interpretation of the word "*connectable".*  For this reason alone,

Brigadoon does not infringe independent claims 1 and 41 of the '758 Patent and independent

claim 1 of the '863 Patent.

As described in the above-cited portion of the Jones Declaration, although the computer

that sends the email (the PCs running the Accused Email Program) and the computer that

receives the email (Brigadoon's office PC) are both connected to the Internet, these computers

are *never* connected to each other as required by the independent claims of the patents-in-suit.

Instead, the Accused Email Program sends emails to Brigadoon's ISP.  Brigadoon periodically

accesses, downloads and stores these emails on its office PC at a later time. No connection is ever made between PCs running the Accused Email Program and Brigadoon's office PC. Although PCs running the Accused Email Program and Brigadoon's office PC both "connect" to Brigadoon's ISP (at different times), *they never connect to each other.* By merely sending an email to Brigadoon's email address, the PCs running the Accused Email Program are not *connectable* to any computer operated by Brigadoon, as required by independent claims 1 and 41of the '758 Patent and independent claim 1 of the '863 Patent.

Accordingly, Brigadoon cannot be deemed to infringe independent claims 1 and 41 of the '758 Patent (and all claims depending therefrom) and independent claim 1 of the '863 Patent (and all claims depending therefrom).

**b.  Brigadoon Does Not Operate or Maintain a "*Host System*"**

Independent claims 1 and 41 of the '758 Patent and independent claim 1 of the '863 Patent require communication between the *electronic device* and a *"host system."* Brigadoon's Accused Email Program does not communicate with a *host system* as explicitly recited by the independent claims of the patents-in-suit.

The phrase *host system,* as used in the patents-in-suit, means <u>a computer that sends communications to the client *electronic device*, receives communications from the client *electronic device* and provides multiple services to assist in locating the client *electronic device.*</u> *See* Katz Dec., ¶¶19-32. As described in the Katz Declaration, the phrase *host system* is used repeatedly, consistently and unmistakably in more than thirty-two instances throughout the specifications of the patents-in-suit to describe a central computer that sends information to the electronic device, receives information from the electronic device, and performs multiple services to assist in locating the electronic device.

For instance, in the "Summary of the Invention", the '758 and '863 Patents describe the purpose of the claimed *host system*:

> This invention relates to a security apparatus and method for retrieving lost or stolen electronic devices such as portable computers, PCs (including stolen components such as CPU, hard drives, etc.), cablevision devices, personal digital assistants (PDAs), cellular telephones, etc. This invention enables electronic devices to be surveyed or monitored by implanting thereon an intelligent agent with a pre-defined task set. This agent communicates with a preselected ***host monitoring system*** which is capable of multiple services including; tracing location, providing identifying indicia such as an electronic serial number (ESN), and electronically notifying the end user/owner of its location. (emphasis added).

*See* '758 Patent, col. 2, lines 16-27; '863 Patent, col. 2, lines 26-3.

Also near the end of the '758 and '863 Patents, the patents state:

> This application contemplates sending and receiving signals from a client computer to a ***host system*** through a global network system.

*See* '758 Patent, col. 17 lines 52-54; '863 Patent, col. 32, lines 65-67.

The above-quoted statements from the patents-in-suit are clear statements of the scope of Plaintiffs' invention. *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004) ("Statements that describe the invention as a whole, rather than statements that describe only preferred embodiments, are more likely to support a limiting definition of a claim term.") (citing *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1347 (Fed. Cir. 1998) (relying on "global comments made to distinguish the applicants' 'claimed invention' from the prior art" during the prosecution of the patent in construing a claim term)). Statements that describe the invention as a whole are more likely to be found in certain sections of the specification, such as the Summary of the Invention. *C.R. Bard, Inc.,* 388 F.3d at 864 (citing *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1348 (Fed. Cir.) ("Those statements, some of which are found in the 'Summary of the Invention' portion of the specification, are not limited to describing a preferred embodiment, but more broadly describe the overall inventions of all three patents."), *cert. denied*, ___ U.S. ___, 125 S. Ct. 61, 160 L. Ed. 2d 31, 2004 WL 2058375 (2004)).

In each of the other dozens of instances (itemized in the Katz Declaration) in which the patents-in-suit use the phrase "host", the term "host" is used to describe a system that sends communications to client computers, receives communications from client computers, and provides multiple services to assist in locating client computers.

The Accused Email Program does not infringe independent claims 1 and 41 of the '758 Patent and independent claim 1 of the '863 Patent because it never causes a PC on which it is loaded to communicate with and/or provide information to and/or receive information from a *host system* as required by these claims. *See* Jones Dec., ¶¶7 and 16-24.  As described by Mr. Jones, Brigadoon's office PC, which receives emails from PCs running the Accused Email Program, does not send communications to the client *electronic device* or provide any services whatsoever to assist in locating the client *electronic device*.  Brigadoon's office PC does not provide access to any other computers on the network and does not provide any services, or data, to PCs running the Accused Email Program.  Thus, Brigadoon's office PC is not a *host system*.

Brigadoon does not infringe even if the Court adopts the dictionary definition of "host computer" submitted in plaintiffs' motion.  *See* Declaration of Plaintiff's Engineering Witness, Gregory B. Ennis, ¶9 and Ex. H.  This definition is – "A computer, attached to a network, providing primary services such as computation, database access, or special programs or programming languages."

The Accused Email Program sends emails to Brigadoon's email address.  As discussed at ¶6 of the Jones Declaration, Brigadoon's office PC, which retrieve these emails, is an off-the-shelf Apple Macintosh PC that has not been modified, configured, or programmed in any manner whatsoever to perform any special functions.  Brigadoon's office PC does not provide any "services" whatsoever to client computers and most assuredly does not provide "services" to

client computers along the lines of "computation, database access, or special programs or programming languages." *Id.*

In summary, Brigadoon's office PC, which receives emails from client computers running the Accused Email Program, is not a *host system* as that term is used in the patents-in-suit, defined in dictionaries introduced by the parties, or known and generally used in the computer field.  Brigadoon's office PC does not host any process relative to the client computer and does not contain data, programs, programming languages, or anything else that may be accessed by the client computer.  Brigadoon's office PC simply does not provide any access of any kind whatsoever to PCs running the Accused Email Program.

Therefore, Brigadoon's office PC, which merely receives emails from client computers running the Accused Email Program, is not a *host system* as that term is used in the specifications and claims of the patents-in-suit, as that term is defined in the technical dictionaries submitted by the parties, or as that term is understood by those of ordinary skill in the art – and as required by the independent claims of the patents-in-suit.

Accordingly, Brigadoon cannot be deemed to infringe independent claims 1 and 41 of the '758 Patent (and all claims depending therefrom) and independent claim 1 of the '863 Patent (and all claims depending therefrom).

c. **Brigadoon's Accused Email Program Does Not Provide *"One or More Global Network Communication Links Used to Enable Transmission Between Said Electronic Device and Said Host System"***

Independent claims 1 and 41 of the '758 Patent and independent claim 1 of the '863 Patent require the step of providing said *host system* with *one or more global network communication links used to enable transmission between said electronic device and said host system.*  Brigadoon's accused email program does not do this.

The phrase *one or more global network communication links used to enable transmission between said electronic device and said host system,* as used in the patents-in-suit, means the IP addresses of a sufficient number of the routers that are accessed to enable communication between the client electronic device and the host system to enable determination of the location of the client electronic device.  *See* Katz Dec., ¶¶37-62.

As described in the Katz Declaration, the phrase *Internet communication links used to enable communication between said electronic device and said host system* is used repeatedly, consistently and unmistakably throughout the specifications of the patents-in-suit exclusively to identify the IP addresses of the routers that are accessed to enable communication between the client computer and the *host system.*

The Accused Email Program does not provide the IP addresses of any routers to a host system.  *See* Jones Dec., ¶¶25-29.  Thus, the Accused Email Program does not provide a host system with ANY *global network communication links used to enable transmission between said electronic device and said host system* as required by the independent claims of the patents-in-suit .

Instead, as described at the above-cited portion of the Jones Declaration, Brigadoon's Accused Email Program merely sends an email to Brigadoon's email address.  That email contains information identifying the transmitting client computer and also contains the "network address," or "IP address" of the client computer.  This IP address is used by Brigadoon and an Internet Service Provider (ISP), such as AOL, to determine the physical location of the client computer.  The IP address of the client computer is not a *global network communication link used to enable transmission between said electronic device and said host system.*

In fact, the patents-in-suit explicitly state that the IP address of the client computer is likely insufficient to determine the location of the client computer ("... the IP address of the

client computer ... will likely be insufficient to track the location of the client computer.  In such a scenario, it is necessary to determine the addresses of other IP routers which were accessed to enable communication between the client and the host").  *See* Katz Dec., ¶¶56-57.  That is precisely why the patents-in-suit require the additional step of providing the host system with the *global network communication links used to enable transmission between said electronic device and said host system.  See* Katz Dec., ¶58.

Specifically, the patents-in-suit utilize the *"traceroute routine"* to determine and provide the *host system* with the *global network communication links used to enable transmission between said electronic device and said host system,* which are used to help locate the client computer.  *See* Katz Dec., ¶¶ 7 and 70-71.  The <u>only</u> information provided by the *traceroute routine* is the IP addresses of the routers used to enable transmission between the client computer and the host system.  *Id; See also* Jones Dec., ¶39.  Thus, the *global network communication links used to enable transmission between said electronic device and said host system* are the IP addresses of the routers used to enable communication between these two devices.

The Accused Email Program merely sends the IP address of the client computer to Brigadoon's email address and does not send any of the *global network communication links "used to enable transmission between said electronic device (the client computer) and said host system"* as required by independent claims 1 and 41 of the '758 Patent and independent claim 1 of the '863 Patent.  *See* Jones Dec., ¶¶ 25 and 28.

Accordingly, the Accused Email Program and PC retrieval services are markedly different from those disclosed and claimed by the patents-in-suit.  Brigadoon uses only the IP address of the client computer to locate the computer by manually accessing public records (via the WHOIS database) to determine the location of a lost or stolen PC.  *See* Jones Dec., ¶¶4-13 and 25-30.

18

All of the claims of the patents-in-suit require "tracing of the communication link between the lost or stolen PC and a *host system* (by using the IP addresses of routers).

Plaintiffs argue that one of ordinary skill in the communications field would not interpret the phrase *global network communication links* to be limited solely to the IP addresses of the routers used to enable transmission between the client and the *host system* but would also be interpreted to include the IP address of the client computer and the IP address of the *host system*.

There is a fundamental problem with Plaintiffs' argument.  Even if the phrase *global network communication links*, by itself, were broad enough to encompass the IP addresses of the client computer and the *host system* as well as the IP addresses of the routers therebetween, the independent claims do not merely recite the phrase *"global network communication links"* by itself.  The claims recite a specific kind of *global network communication links* – specifically, those *global network communication links* that are between the client computer and the host system – i.e., those *used to enable communication between said electronic device* (client computer) *and said host system*.  In other words, the independent claims do not merely require providing the host system with ANY *global network communication links*.  The claims require providing the host system with one or more of the links which are *used to enable communication between said electronic device and said host system*.  The only links that are *used to enable communication between* the electronic device and the host system are the routers interposed in the communication pathway between the client computer and the host system.   Only the links that are between the client computer and the host are *used to enable transmission between said electronic device* (the client computer) *and the host system*.

Since the client computer itself and the host system itself are not links that are used to enable communication between themselves, the interpretation urged by Plaintiffs would lead to a nonsensical construction.  *See Schoenhaus v. Genesco, Inc.*, 2006 U.S. App. LEXIS 6172 (Fed.

Cir., Mar. 15, 2006) (use of claim term in context of claim rendered Plaintiff's proposed

definition 'nonsensical'); *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir.

2004) (concluding that phrases "conformable" and "pliable" require pleating based on use of

these terms in context of intrinsic evidence patent specification).

     As further described at ¶51 of the Katz Declaration, although in the preferred

embodiments of the patents-in-suit, the "complete linking information" (the IP addresses of all

the routers used to enable communication between the client computer and the host) are provided

to the Internet governing body in an attempt to determine the owner of the source IP address, the

independent claims recite that only "*one or more*" of the IP addresses of the routers used to

enable transmission between the client computer and the host are provided to the *host system*.

However, in order for the independent claims to be enabling, it is clear from reading the patents-

in-suit that a sufficient number of the IP addresses of the routers must be presented in order to

enable determination of the location of the client computer.  That is why Brigadoon's proposed

definition includes the requirement for the IP addresses of "a sufficient number" of the routers to

enable the electronic device to be located.  *See, e.g., Athletic Alternatives, Inc. v. Prince Mfg.,*

*Inc.*, 73 F.3d 1573 (Fed. Cir. 1996) ("Where there is an equal choice between a broader and a

narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant

is at least entitled to a claim having the narrower meaning, we consider the notice function of the

claim to be best served by adopting the narrower meaning"); *Digital Biometrics, Inc. v. Identix,*

*Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed.

Cir. 2005).

     The prosecution history of the patents-in-suit (which is intrinsic evidence) also confirms

Brigadoon's proposed definition.  As described at ¶¶59-62 of the Katz Declaration, Plaintiffs

characterized the invention claimed by the '863 Patent by stating that it relates to "determination

of the location of the device based on tracing of the communication link…" and that "the present invention determines the location of the electronic device by relying on the transmission characteristic via the communication links …" and "for the present invention defined in claim 1, the transmission via the communication [link] is used for determining the location of the electronic device."   The comments made relating to claim 1 of the '863 patent apply equally to claims 1 and 41 of the '758 patent because those claims are virtually identical to claim 1 of the '863 patent.

Brigadoon uses the IP address of the client computer to determine the location of the client computer.  The IP address of the client computer identifies the client computer in precisely the same way Caller ID data identifies the telephone used to place a call.  Using only that identifier of the client computer to determine the location of the client computer is not "determination of the location of the device based on tracing of the communication link" as stated by Plaintiffs during prosecution of the '863 Patent.  Nor does using the IP address of the client computer for determining the location of the client computer constitute determining "the location of the electronic device by relying on the transmission characteristic via the communication links" as further stated by Plaintiffs during prosecution of the '863 Patent.  On the other hand, using the IP addresses of the routers used for transmitting data between the client and the host system is equivalent to "determination of the location of the device based on tracing of the communication link" and is also equivalent to determining "the location of the electronic device by relying on the transmission characteristic via the communication links".

The IP address of the client computer is not "the transmission characteristic" as urged by Plaintiffs during prosecution of the '863 Patent.

Brigadoon's Accused Email Program does not provide a host system with *one or more global network communication links used to enable transmission between said electronic device*

21

*and said host system* as required by the independent claims of the patents-in-suit.  Accordingly, Brigadoon cannot be deemed to infringe independent claims 1 and 41 of the '758 Patent (and all claims depending therefrom) and independent claim 1 of the '863 Patent (and all claims depending therefrom).

### d.  Brigadoon's Accused Email Program is not Loaded Within Said Electronic Device *"Such That Said Agent Evades Detection"*

Independent claims 1 and 41 of the '758 Patent require the step of "*loading said agent within said electronic device for initiating communication with said host system such that said agent evades detection"*.  Brigadoon's Accused Email Program does not infringe these claims because it is not loaded within an electronic device such that it evades detection.  The Accused Email Program is loaded into a computer in precisely the same way as other conventional programs.  The fact that the Accused Email Program is loaded in a computer is readily detectable by a user.  The Accused Email Program simply does not evade detection.  A knowledgeable user can readily detect the presence of the Accused Email Program.  *See* Jones Dec., ¶30.

### e.  Since the Accused Email Program Does Not (1) "Connect" to a (2) "Host System" or Provide the "Host System" with any of the (3) "Global Network Communication Links Used to Enable Transmission Between Said Electronic Device and Said Host System, Brigadoon Does Not Infringe Any of the Asserted Claims

To infringe independent claims 1 and 41 of the '758 Patent and independent claim 1 of the '863 Patent, an accused product or method must: (1) be *connectable* to (2) a *host system* through a *global network* and (3) provide the *host system* with *one or more global network communication links used to enable transmission between said electronic device and said host system*.  The Accused Email Program does not infringe any of these claims because it does not cause a computer in which it is loaded to be *connectable* to a *host system* and does not provide a *host system* with <u>any</u> of the *global network communication links used to enable transmission between said electronic device and said host system*.  Furthermore, PCs loaded with the Accused

Email Program are not loaded into PCs such that they evade detection as required by independent claims 1 and 41of the '758 Patent.

Thus, Brigadoon does not infringe independent claims 1 and 41 of the '758 Patent and independent claim 1 of the '863 Patent.  For this reason alone, the Accused Email Program cannot infringe any of the other claims asserted by Plaintiffs, which depend upon these independent claims.  Accordingly, Plaintiffs' infringement claims should be dismissed.

As further demonstrated below, Brigadoon's Accused Email Program also does not include the limitations of the dependent claims asserted against.

**2.  Brigadoon Does Not Infringe Dependent Claims 3 or 43 of the 758 Patent or Dependent Claim 3 of the '863 Patent**

Since Brigadoon does not infringe independent claims 1 and 41 of the '758 Patent and independent claim 1 of the '863 Patent, it cannot be deemed to infringe dependent claims 3 or 43 of the '758 Patent (which depend on independent claims 1 and 41) and dependent claim 3 of the '863 Patent (which depends upon claim 1).  However, even if Brigadoon did infringe the independent claims, it could not be deemed to infringe claims 3 and 43 because the Accused Email Program does not meet all of the limitations contained in these claims.

More specifically, dependent claim 3 of the '758 patent and dependent claim 3 of the '863 Patent further limit independent claim 1 of the respective patents by reciting that:

> (1) *said electronic device is further connected to said host system through a telephone network, and said method further includes the steps of*
>
> (2) *providing said identifying indicia to said host system through said telephone network, and*
>
> (3) *determining the location of said electronic device by tracing the source of said identifying indicia within said telephone network.*

Dependent claim 43 of the '758 Patent further limits independent claim 41 by further reciting that:

(1) *said electronic device is further connected to said host system through a telephone network, and*

(2) *said apparatus further includes means for providing said identifying indicia to said host system through said telephone network, and*

(3) *means for determining the location of said electronic device by tracing the source of said identifying indicia within said telephone network.*

As described by the patents-in-suit, in addition to using the Internet to contact the *host system,* the patented intelligent software *agent* calls the *host system* by telephone over the Public Switched Telephone Network (PTSN) using a modem contained in the client computer.  When it receives this telephone call, the *host system* receives Caller ID information from the telephone company identifying the telephone number from which the client computer is calling the *host computer.*  In this manner, the location of the PC *within the telephone network* can be determined (by referencing telephone company billing records).  It is this structure of the patents-in-suit that is recited by dependent claims 3 and 43 of the '758 Patent and dependent Claim 3 of the '863 Patent.

As described at ¶¶ 31-35 of the Jones Declaration, neither Brigadoon itself nor the Accused Email Program performs any similar functions or contains any similar structure.

In their motion and in the declaration of their engineering witness, Gregory B. Ennis, plaintiffs address only the limitations of claims 3 and 43 labeled above as (1) and (2).  Plaintiff's motion conveniently overlooks the limitation labeled above as (3) in its entirety – *determining the location of said electronic device by tracing the source of said identifying indicia within said telephone network.*

Patent infringement can be shown only by demonstrating that Brigadoon infringes "each and every limitation" of claims 3 and 43.  (*See* page 3 above).  Since plaintiffs cannot possibly meet this burden, they have addressed only limitations (1) and (2) of claims 3 and 43, which are

present in the Accused Email Program, and ignored limitation (3), which is entirely absent from the Accused Email Program.

In this regard, the Accused Email Program does not perform the step labeled as (3) in dependent claim 3 of both of the patents-in-suit.  Nor does it include the structure labeled as (3) in dependent claim 43 of the '758 Patent.  *See* Jones Dec., ¶¶31-35.

More specifically, Brigadoon does not *ever* perform the step of tracing the location of an electronic device *within a telephone network* as required by claim 3 of the '758 and '863 Patents. Nor does the Accused Email Program include structure for tracing the location of an electronic device *within a telephone network* as required by claim 43 of the '758 Patent.

As discussed above, Brigadoon determines the location of a stolen PC containing the Accused Email Program by manually reviewing public records and by seeking the assistance of an ISP to review its records to determine the physical address of an individual or business subscriber to whom a specific IP address was assigned at a particular date and time.  The step of tracing the source of identifying indicia *within a telephone network*, as recited by claim 3 of the '758 Patent and claim 3 of the '863 Patent, is simply never performed by or in connection with the Accused Email Program.

In order to find that Brigadoon infringes claims 3 and 43 of the '758 Patent and claim 3 of the '863 Patent, it is necessary to show that Brigadoon determines the location of the electronic device (the PCs running the Accused Email Program) *within said telephone network*. Although Brigadoon attempts to determine the location of stolen PCs containing the Accused Email Program, Brigadoon never engages in *tracing the location* of stolen PCs *within a telephone network* or by *tracing* the source of identifying indicia *within a telephone network* as required by claims 3 and/or 43 of the patents-in-suit.

Furthermore, claim 43 of the '758 Patent requires *means for determining the location of said electronic device by tracing the source of said identifying indicia within said telephone network.*  The Accused Email Program does not include any means whatsoever for determining the source of identifying indicia and most certainly does not include the claimed *means* for tracing the location of the electronic device *within said telephone network*, as recited by claim 43 of the '758 Patent.  *See* Jones Dec., ¶35.  The Accused Email Program does not include any means whatsoever for determining the source of the identifying indicia.  *Id.*  As described by the Jones Declaration, the source of identifying indicia (a client computer) is not determined by the Accused Email Program but is determined manually by Brigadoon's employee's manual search of public records and by an ISP's review of its own records to determine the street address of its subscriber to whom a specific IP address was assigned at a particular date and time.  The locating process used by Brigadoon is clearly not done within a telephone network as required by dependent claims 3 and 43 of the patents-in-suit.

### 3.  <u>Brigadoon Does Not Infringe Dependent Claims 7 or 47 of the '758 Patent or Dependent Claim 7 of the '863 Patent</u>

Because Brigadoon does not infringe independent claims 1 and 41 and dependent claim 3 of the '758 Patent, and does not infringe independent claim 1 and dependent claim 3 of the '863 Patent, Brigadoon cannot be deemed to infringe dependent claims 7 or 47 of the '758 Patent or dependent claim 7 of the '863 Patent.  However, even if Brigadoon did infringe base claim 1 and dependent 3 of the '758 and '863 Patents, and base claim 41 and dependent claim 43 of the '758 Patent, it can not be deemed to infringe claims 7 and 47 because its accused email program does not meet the limitations contained in these claims.

More specifically, dependent claim 7 of the patents-in-suit further limit dependent claim 3 of the respective patents by reciting that:

said step of providing said host system with said identifying indicia through
said global network, and said step of providing said identifying indicia to said
host system through said telephone network occur at *predetermined intervals*.

Similarly, dependent claim 47 of the '758 Patent further limits dependent claim 43 by

reciting that:

said means for providing said host system with said identifying indicia
through said global network, and said means for providing said identifying
indicia to said host system through said telephone network operate at
*predetermined intervals*.

The phrase *predermined intervals* means that <u>the step of providing the identifying indicia

to the host system is performed regularly at time intervals that are determined beforehand.</u>

<u>Stated otherwise, the "intervals" between the times that the identifying indicia is provided to the</u>

<u>host system are "determined beforehand."</u>  *See* Katz Dec., ¶¶63-69.

In a patent claim, the term "predetermined" means "determined beforehand."  *See, e.g.,*

*Koito Mfg. Co., Ltd. v. North American Lighting, Inc.,* 381 F.3d 1142, 1147-48 (Fed. Cir. 2004)

(ordinary meaning of predetermined is "determined beforehand"); *Ferguson Beauregard/Logic*

*Controls, Division of Dover Resources, Inc. v. Mega Systems, LLC*, 350 F.3d 1327, 1340 (Fed.

Cir. 2003) (predetermined means determined beforehand).

The word "intervals" means "the amount of time between two specified instants, events,

or states."  *See* Katz Dec., ¶65.

Thus, the meaning of "predetermined intervals" in claim 7 is that the amount of time

between the times that the identifying indicia is provided to the host system is "determined

beforehand."

As described at ¶¶63-69 of the Katz Declaration, the '758 and '863 Patents repeatedly,

consistently and unmistakably disclose that the step of providing the identifying indicia to the

host system through said telephone network occur at predetermined intervals (regularly, spaced-

apart times that are "determined beforehand") (such as "every four hours" or "at relatively short

predetermined intervals"). Thus, the patents-in-suit utilize the phrase "predetermined" in accordance with its ordinary meaning.

Accordingly, in the context of claims 7 and 47 of the '758 Patent and claim 7 of the '863 Patent, the phrase *predetermined intervals* means that the step of providing the identifying indicia to the host system is performed regularly at time intervals that are determined beforehand. Stated otherwise, the "intervals" between the times that the identifying indicia is provided to the host system are "determined beforehand."

Earlier versions of the Accused Email Program sent emails containing identifying indicia to Brigadoon's email address every 24 hours. Thus, these earlier versions of Brigadoon's Accused Email Program met the requirement for sending identifying indicia at *predetermined intervals* – regular intervals of time that are determined beforehand (every 24 hours). *See* Jones Dec., ¶36.

However, the version of the Accused Email Program that is currently being offered for sale by Brigadoon does not send emails every 24 hours. Instead, the current version sends emails containing identifying indicia to Brigadoon's email address at *random* and not *regularly at intervals that are determined beforehand. See* Jones Dec., ¶37.

More specifically, the current version of the Accused Email Program sends an email to Brigadoon's email address each time an Internet connection is established using a computer on which the Accused Email Program is loaded. This occurs at random times that are certainly not "determined beforehand." *See* Jones Dec., ¶38. Since this occurs at entirely random times rather than at time intervals that are determined beforehand, it does not occur at the *predetermined intervals* required by dependent claims 7 and 47 of the '758 Patent and dependent claim 7 of the '863 Patent.

**4.  Brigadoon Does Not Infringe Dependent Claims 8 or 48 of the
     '758 Patent or Dependent Claim 8 of the '863 Patent**

Dependent claim 8 of the '758 Patent and dependent claim 8 of the '863 Patent further limit dependent claim 7 of the respective patents by reciting that the electronic device is lost or stolen and, further includes the step of tracing lost or stolen electronic devices.  The Accused Email Program does not infringe claim 8 of the '758 Patent or claim 8 of the '863 Patent because it does not infringe claims 1, 3 or 7 of either the '758 Patent or the '863 Patent, upon which claim 8 of each patent depends.

Dependent claim 48 of the '758 Patent further limits claim 43 by reciting that the electronic device is lost or stolen.  The Accused Email Program does not infringe claim 48 because it does not infringe claims 41 or 43, upon which claim 48 depends.

**5.  Brigadoon Does Not Infringe Dependent Claim 9 of the '758 and '863 Patents**

Dependent claim 9 of the patents-in-suit further limit claim 2 of the respective patents. Claim 2 further limits claim 1 by reciting that the *global network* is the *Internet*.  Claim 9 further recites that the step of providing said host system with said one or more of the *Internet communication links* is accomplished using a *traceroute routine*.

A *traceroute routine* is defined as <u>a program that provides the route over the network between the client electronic device and the host system, by listing the IP addresses of all intermediate routers a connection must pass through to get from the client electronic device to the host system</u>.  *See* Katz Dec., ¶¶70-71.

The Accused Email Program does not *ever* perform a *traceroute routine* and does not cause a *traceroute routine* to be performed.  Nor does Brigadoon ever perform a *traceroute routine* in connection with its attempts to locate its customers stolen PCs.  *See* Jones Dec., ¶¶ 39-40.

Accordingly, the Accused Email Program does not infringe claim 9 of either of the patents-in-suit.  Also, the Accused Email Program does not infringe claim 9 because it does not infringe claim 1, upon which claim 9 depends.

**6.  Brigadoon Does Not Infringe Dependent Claims 18 or 57 of the ‘758 Patent or Dependent Claim 18 of the ‘863 Patent**

Dependent claim 18 of the patents-in-suit further limit dependent claim 17 of the respective patents.  Claim 17 of the ‘758 and ‘863 Patents further limit claim 1 of the respective patents.  Claim 17 of both patents recites that the electronic device is a computer having a hard drive.  Claim 18 of both patents recites the additional step of *providing said agent with deflection means to enable said agent to resist disablement attempts and evade detection*.

Dependent claim 57 of the ‘758 Patent further limits claim 42 (which recites that the global network is the Internet) by reciting that the *agent is provided with deflection means for evading detection and resisting disablement*.

The phrase *deflection means,* as used in the claims of the patents-in-suit, is defined as software that deflects attempts to read or write to the memory location where the agent has been installed in the client computer by generating meaningless bytes of data when read attempts are made to the agent's location in memory and informing the user that write attempts to that memory location have been successful even though no data is really stored at that location.  This definition is mandated by the requirements of 35 U.S.C. §112, sixth paragraph.  See Katz Dec., ¶¶72-79.

A claim limitation that uses the word "means" invokes a rebuttable presumption that the requirements of 35 U.S.C. §112, sixth paragraph applies.  *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002); *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1302 (Fed. Cir. 1999).  35 U.S.C. §112, six paragraph, mandates that such a claim limitation "be

construed to cover the corresponding structure … described in the specification and equivalents thereof." *Personalized Media Communs., L.L.C. v. ITC*, 161 F.3d 696, 703 (Fed. Cir. 1998). *See also Linear Tech. Corp. v. Impala Linear Corp.*, 371 F.3d 1364, 1371 (Fed. Cir. 2004); *Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1373 (Fed. Cir. 2003); *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1231 (Fed. Cir. 2001); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427 (Fed. Cir. 1997); *York Prods., Inc. v. Cent. Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1574 (Fed. Cir. 1996).

The presumption that a limitation containing the term "means" is subject to 35 U.S.C. §112, sixth paragraph, can only be overcome if it is demonstrated that the claim term recites sufficiently definite structure. *CCS Fitness*, 288 F.3d at 1369 (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). Analysis of a means-plus-function limitation is uniquely different from other types of claim limitations. As the U.S. Supreme Court said in *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996):

> Although a "means-plus-function" limitation may appear to include all means capable of achieving the desired function, 35 U.S.C. §112, paragraph 6 requires that it be "construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *See In re Iwahashi*, 888 F.2d 1370, 1375 n. 1, 12 USPQ2d 1908, 1912 n. 1 (Fed. Cir. 1989) (applying § 112 para. 6 to PTO proceedings, and harmonizing prior case law); *Johnston v. Ivac Corp.*, 885 F.2d 1574, 1580, 12 USPQ2d 1382, 1386 (Fed. Cir. 1989) ("section 112 para. 6 operates to *cut back* on the types of *means* which could literally satisfy the claim language," (emphasis in original)).

Because the "deflection means" limitation of claims 18-19 of the '758 and '863 Patents is expressed in "means plus function" language and because it does not recite definite structure in support of its function, it is subject to the requirements of 35 U.S.C. § 112, sixth paragraph. *See B. Braun Medical, Inc. v. Abbott Laboratories and NP Medical, Inc.*, 124 F.3d 1419 (Fed. Cir. 1997); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996); *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1584 (Fed. Cir. 1996). As noted, that provision mandates that

such a claim limitation "be construed to cover the corresponding structure … described in the specification and equivalents thereof."  35 U.S.C. §112, sixth paragraph.

To construe a means-plus-function claim limitation, the Court must first identify the specified function of the "means."  *See Micro Chemical v. Great Plains Chemical Co.*, 194 F.3d 1250, 1257-58 (Fed. Cir. 1999).  Second, the Court must identify the structure corresponding to the function in the specification.  *See Kemco Sales, Inc., v. Control Papers Co., Inc.*, 208 F.3d 1352, 1360 (Fed. Cir. 2000).  A structure "disclosed in the specification is only deemed to be a corresponding structure' if the specification clearly links or associates that structure to the function recited in the claim."  *Kahn v. GMC*, 135 F.3d 1472, 1476 (Fed. Cir. 1998).  As stated by the Federal Circuit in *B. Braun Medical*, "[w]e hold that, pursuant to this provision, structure disclosed in the specification is "corresponding" structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.  This duty to link or associate structure to function is the quid pro quo for the convenience of employing § 112, P 6." (citing *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1583 (Fed. Cir. 1997).  "If one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language.  If an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112."  *Id.  See B. Braun Medical, supra*, and *Storage Technology Corp. v. Cisco Sys., Inc.*, 2001 U.S. Dist. LEXIS 25876 (S.D. Cal. 2001) for an example of how this analysis is performed.

Turning to the written description of the patents-in-suit to find the structure that corresponds to the "deflection means" recited in claims 18 and 19 of the respective patents, clear and unambiguous reference to such structure can be found in only one location.  Specifically, the only use of the word "deflection" contained in the specifications of the patents-in-suit appears at

col. 10, lines 44-58 of the '758 Patent and col. 12, lines 19-31 of the '863 Patent.  The text from the '758 Patent appears below:

> The system remains transparent to an unauthorized user via implementation of *well-known deflection methods*.  Attempts to read or write to the location where the Agent has been installed are *deflected* in order to prevent discovery of the agent.  When read attempts are made to the Agent location the system generate [sic] meaningless bytes of data to be returned to the user.  When write attempts are made to the location where the Agent is installed, the client computer accepts the input data and informs the user that the write has been successful.  However, the data is not really stored, and thus the Agent is preserved.  In the Appendix, the source code for the disk deflection routines are disclosed within file SNTLI13V.ASM.  The Agent, in order to remain hidden to the user, will not interfere with any running applications unless designed to interfere.

Thus, as discussed in the above-quoted paragraph from the patents-in-suit, the "deflection means" recited by claims 18 and 19 is software that "deflects" attempts to read or write to the location where the agent has been installed.  Specifically, when read attempts are made to that location, such software generates meaningless bytes of data to be returned to the user.  When write attempts are made to that location, the data is accepted and the user is informed that the write attempt has been successful.  However, the data is not really stored.

Accordingly, the only possible definition of the "deflection means", as recited in claims 18 and 19 of the patents-in-suit is "software that deflects attempts to read or write to the memory location where the agent has been installed in the client computer by generating meaningless bytes of data when read attempts are made to the agent's location in memory and informing the user that write attempts to that memory location have been successful even though no data is really stored at that location."

The specifications of the patents-in-suit do not particularly point out any other possible interpretation for the claimed "deflection means".  Thus, any definition of the claimed "deflection means" that is contrary to Brigadoon's must fail.  For instance in *B. Braun Medical, supra,* the Court rejected Braun's interpretation of a means-plus-function limitation as covering a

valve seat because the specification failed to describe that the valve seat performed the claimed function. *See also Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996) (rejecting the patentee's broad interpretation of the claim because the patentee particularly pointed out and distinctly claimed only the narrower interpretation); *Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1551-52 (Fed. Cir. 1997) (explaining that although the specification states that other wave forms may be used, it fails to specifically identify those wave forms and thus the §112, sixth paragraph, claim is limited to the generic gradient wave form actually disclosed).

Accordingly, the phrase *deflection means* is defined as <u>software that deflects attempts to read or write to the memory location where the agent has been installed in the client computer by generating meaningless bytes of data when read attempts are made to the agent's location in memory and informing the user that write attempts to that memory location have been successful even though no data is really stored at that location</u>. This definition is mandated by the requirements of 35 U.S.C. §112, sixth paragraph.

The Accused Email Program does not include the claimed *deflection means*. The Accused Email Program does not include software routines that generate meaningless bytes of data to be returned to the user when read attempts are made to location where it is stored. *See* Jones Dec., ¶41. Nor does the Accused Email Program include software routines for accepting input data and informing the user that the write has been successful when write attempts are made to location where it is stored. *Id.* Nor does the Accused Email Program include any software routines that perform a similar function to that of the claimed *deflection means. Id.* Plaintiffs do not allege otherwise.

Accordingly, the Accused Email Program does not infringe claim 18 or claim 57 of the '758 Patent or claim 18 of the '863 Patent. Also, the Accused Email Program does not infringe

these claims because it does not infringe claim 1 or 41 of either patent, upon which claim 18/57 depends.

**7.   Brigadoon Does Not Infringe Dependent Claims 19 or 58 of the '758 Patent or Dependent Claim 19 of the '863 Patent**

Dependent claim 19 of the '758 and '864 Patents Patent further limit dependent claim 18 of the respective patents.  Claim 19 of both patents recites that *the deflection means deflects read and write attempts to the location where said agent is disposed*.

Dependent claim 58 of the '758 Patent further limits claim 57 by reciting that the *deflection means deflects read and write attempts to the location where said agent is disposed.*

As discussed in connection with dependent claim 18, the Accused Email Program does not include the *deflection means* recited in dependent claim 19 of the '758 and '863 Patents and dependent claim 58 of the '758 Patent.  Accordingly, the Accused Email Program does not infringe dependent claim 19 of the '758 and '863 Patents or dependent claim 58 of the '758 Patent.  Also, the Accused Email Program also does not infringe claim 19 or claim 58 because it does not infringe claims 1 or 18 of the patents-in-suit, upon which claim 19 depends, or claims 41 and  57, upon which claim 58 depends.

**8.   Brigadoon Does Not Infringe Dependent Claims 20 and 56 of the '758 Patent**

Dependent claim 20 of the '758 Patent further limits independent claim 1 of the respective patents by reciting that *the step of evading detection is accomplished by providing an agent which is operable without interfering with the normal operation of said electronic device*.

Dependent claim 56 of the '758 Patent further limits claim 41 by reciting that the *agent evades detection by operating without interfering with the normal operation of said electronic device*.

The Accused Email Program does not infringe dependent claims 20 and 56 of the '758 Patent.  A PC in which the Accused Email Program has been installed runs differently than it

does without the accused email program loaded thereon.  Thus, the Accused Email Program most certainly does interfere with the normal operation of the electronic device.  *See* Jones Dec., ¶42.

Accordingly, the Accused Email Program does not infringe dependent claims 20 and 56 of the '758 Patent.  Also, the Accused Email Program also does not infringe either of claims 20 or 56 because it does not infringe independent claim 1, upon which claim 20 depends or independent claim 41, upon which claim56 depends.

**9.   Brigadoon Does Not Infringe Dependent Claim 23 of the '758 Patent**

Dependent claim 23 of the '758 Patent further limits claim dependent 17.  Claim 17 further limits claim 1 by reciting that the electronic device is a computer having a hard drive. Claim 23 further limits claim 17 by reciting that *the step of loading said agent within said computer is accomplished by loading said agent within an operating system file on said hard drive*.

An *Operating System File* is defined as <u>one of the programs making up the operating system of a computer</u>.  *See* Katz Dec., ¶¶80-82.  As described in the Katz Declaration, the patents-in-suit use the phrase *operating system file* in precisely this manner.

The Accused Email Program does not infringe claim 23 because it is not loaded within an operating system file on the hard drive.  *See* Jones Dec., ¶43.  Also, the Accused Email Program does not infringe claim 23 because it does not infringe claim 1, upon which claim 23 depends.

**10.   Brigadoon Does Not Infringe Dependent Claim 29 of the '758 Patent**

Dependent claim 29 of the '758 Patent further limits dependent claim 17 thereof.  Claim 17 further limits claim 1 by reciting that the electronic device is a computer having a hard drive. Claim 29 further limits claim 17 by reciting that the *agent is an application program*.

An *application program* is defined as <u>a program designed to assist the user in the</u>
<u>performance of a specific task, such as word processing, accounting, or inventory management.</u>
<u>An application is contrasted with a utility, which is a program designed to perform a particular</u>
<u>task that solves narrowly focused problems or those related to computer system management (for</u>
<u>example, a storage backup program, disk and file recovery program, or resource editor)</u>.  See
Katz Dec., ¶¶83-86.

In *Eolas Technologies, Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1336-37 (Fed. Cir. 2005),
*reh'g den* (*en banc*) 2005 U.S. App. LEXIS 10067, cert. denied, 126 S.Ct. 568, 163 L.Ed.2d 499,
(2005), the Federal Circuit defined the phrase "executable application" to mean "any computer
program code, that is not the operating system or a utility, that is launched to enable an end user
to directly interact with data".

In *Eolas Technologies*, the Federal Circuit pointed out that the specification of the patent-
in-suit did not mention or define the phrase "executable application".  Thus, the Court relied on
the dictionary definition of the phrase.  In doing so, the Court found support for this meaning in
the Microsoft Press Computer Dictionary.  For instance, the 1994 Microsoft Press Computer
Dictionary defined an "application" as "a computer program designed to help people perform a
certain type of work.  An application thus differs from an operating system (which runs a
computer), a utility (which performs maintenance or general-purpose chores), and a language
(with which computer programs are created). ..." (citing Microsoft Press Computer Dictionary
23-24 (2d ed. 1994)).  The Court also noted that "[a] few years later, the same dictionary defined
"application" as "a program designed to assist in the performance of a specific task, such as word
processing, accounting, or inventory management.  Compare utility." (citing Microsoft Press
Computer Dictionary 27 (3d ed. 1997)) and that still "another source on the meaning of technical

37

language defines "application" as a "program or group of programs designed for end users." (citing ZD Webopaedia, at http://www.zdwebopedia.com/ TERM/a/application.html)).

The Accused Email Program is not an *application program* as that term is understood in the art and used in the patents-in-suit.  Instead, the Accused Email Program is a utility program because its functions are intended to solve a narrowly focused problem related to computer system management -- sending the same email to Brigadoon's email address each time the computer accesses the Internet so that the location of the computer can be determined if it is stolen.  *See* Jones Dec., ¶44-45.

Accordingly, the Accused Email Program does not infringe claim 29 because it is not an *application program*.  Also, the Accused Email Program also does not infringe claim 29 because it does not infringe claim 1, upon which claim 29 depends.

**11.  Brigadoon Does Not Infringe Dependent Claims 32-34 of the '758 Patent**

Dependent claim 32 of the '758 Patent further limits dependent claim 31.  Claim 31 further limits claim 1 and recites that the agent provides said identifying indicia automatically and without user intervention.  Claim 32 further recites that the step of providing said host system with said identifying indicia occurs without causing audible or visible signals to be emitted from said electronic device.

Dependent claim 33 of the '758 Patent further limits dependent claim 2, which recites that the global network of claim 1 is the Internet.  Claim 33 further limits claim 2 by reciting that the communication link between said electronic device and said host system is provided through a link to a private network connection to the Internet.

Dependent claim 34 of the '758 Patent further limits dependent claim 2, which recites that the global network of claim 1 is the Internet.  Claim 34 further limits claim 2 by reciting that

the communication link between said electronic device and said host system is provided through a telephone line connected to an Internet provider.

The Accused Email Program does not infringe any of claims 32-34 of the '758 Patent because it does not infringe claim 1, upon which each of claims 32-34 depends.

## 12.  Brigadoon Does Not Infringe Dependent Claims 35 or 64 of the '758 Patent

Dependent claim 35 of the '758 Patent further limits claim 1 by reciting the additional step of *assigning said identifying indicia to said agent wherein said identifying indicia comprises a unique electronic serial number, said electronic serial number for enabling the determination of the identity of said electronic device associated with said agent*.

Dependent claim 64 of the '758 Patent depends upon claim 42, which recites that the global network is the Internet.  Dependent claim 64 further recites *means for assigning said identifying indicia to said agent wherein said identifying indicia comprises a unique electronic serial number, said electronic serial number for enabling the determination of the identity of said electronic device associated with said agent*.

Plaintiffs do not allege that the Accused Email Program *assigns said identifying indicia to said agent*, as required by dependent claims 35 and 64.  The Accused Email Program does not, in fact, perform this step.  Nor does Brigadoon itself perform this step.  *See* Jones Dec., ¶46.

Accordingly, the Accused Email Program does not infringe dependent claims 35 or 64 of the '758 Patent because it does not *assign said identifying indicia to said agent* as required by the claim.  Also, the Accused Email Program does not infringe dependent claims 35 and 64 because it does not infringe claim 1, upon which claim 35 depends and does not infringe independent claim 41, upon which dependent claim 64 depends.

**13.  Brigadoon Does Not Infringe Dependent Claims 60-63 of the '758 Patent**

Dependent claim 60 of the '758 Patent further limits claim 59, which recites that the means for providing said host system with said identifying indicia operates automatically and without user intervention.  Claim 60 further limits claim 59 by reciting that the means for providing said host system with said identifying indicia for said electronic device occurs without causing audible or visible signals to be emitted from said electronic device.

Dependent claim 61 of the '758 Patent depends upon claim 42, which recites that the global network is the Internet, and further recites that the Internet connection between said electronic device and said host system is provided through a link to a private network connection to the Internet.

Dependent claim 62 of the '758 Patent depends upon claim 61 and further recites that the link to a private network connection to the Internet is a wireless link.

Dependent claim 63 of the '758 Patent depends upon claim 42, which recites that the global network is the Internet, and further recites that the Internet connection between said electronic device and said host system is provided through a telephone line connected to an Internet provider.

The Accused Email Program does not infringe any of dependent claims 60-63 of the '758 Patent because it does not infringe claims 42, 42 or 59, upon which these claims depend.

## IV.  CONCLUSION

For the reasons stated above, Brigadoon's Accused Email Program does not infringe any of claims 7-9, 18-20, 23, 29, 32-35, 47, 48, 56-58, 60-63 or 64 of the '758 Patent or any of claims 7, 8 or 18-20 of the '863 Patent.  Accordingly, Brigadoon's motion for summary judgment of non-infringement should be granted.

Dated: April 10, 2006

_____/s/_____

225 Broadway – 37th Floor.
New York, NY  10007
(212)233-3434

*Attorney for Defendant/*
*Counterclaim-Plaintiff*
Brigadoon Software, Inc.